BIRD TRUCKING COMPANY, a corporation, and H. A. Dallman, doing business as Dallman Truck Lines, Plaintiffs,

v.

UNITED STATES of America, and Interstate Commerce Commission, Defendants.

No. 2551.

United States District Court
W. D. Wisconsin.

Sept. 23, 1955.

Dineen, Gleason, Shaughnessy & Dineen, Milwaukee, Wis., Fairchild, Charne & Kops, Milwaukee, Wis., of counsel, for plaintiffs.

Stanley N. Barnes and James E. Kilday and John H. D. Wigger, Sp. Assts. to Atty. Gen., and George E. Rapp, U. S. Atty., Madison, Wis., for the United States.

Edward M. Reidy, Samuel R. Howell, Washington, D. C., and Hugh E. Lillie, Chicago, Ill., for Interstate Commerce Commission.

Before DUFFY, Circuit Judge, and STONE and TEHAN, District Judges.

DUFFY, Circuit Judge.

This is a suit to enjoin and set aside an order of the Interstate Commerce Commission entered November 17, 1952, reported in 61 M.C.C. 311.

On June 1, 1935, John C. Bird was a common carrier by motor vehicle operating between Chicago, Illinois, and certain points in Wisconsin. He died in 1941 and his widow, Julia Bird, carried on the operation until 1945. William F. Schaefer then purchased the business and thereafter a portion of the business was sold by Schaefer to Bird Trucking Company, one of the plaintiffs, and the remaining portion to H. A. Dallman, the other plaintiff.

Within the time required by law, John C. Bird applied to the Interstate Commerce Commission under the "Grandfather" clause of § 206(a) of the Interstate Commerce Act (49 U.S.C.A. § 306), for a certificate of authority to carry on the interstate motor transportation service performed by him on June 1, 1935. Bird described his traffic as consisting of canned goods, groceries, trunks and household goods. On October 19, 1937 he submitted an amendment to his application and asked for authority to operate "as a common carrier of canned goods and other grocery items," and also household goods and effects. On January 11, 1938 the Commission issued a Compliance Order in which the "grandfather" rights of Bird were found to be those of a common carrier by motor vehicle of "canned goods and groceries" between Chicago and certain points in Wisconsin. The order also found applicant had operating rights to transport household goods between certain points in Wisconsin and Illinois.

Objections were filed to the Commission's order. Bird produced additional evidence. On October 22, 1938, a second Compliance Order was issued which differed from the original order in that the latter order authorized a more extensive geographic operation, and permitted the transportation of both "groceries" and "canned goods" in either direction between Chicago and designated points in Wisconsin. On June 24, 1941 the Commission issued a Certificate of Convenience and Necessity authorized in the second Compliance Order. The certificate was issued to Julia Bird as successor in interest to John C. Bird who had died in January, 1941.

In 1948 and 1949 certain competitors filed complaints with the Commission charging that Schaefer was transporting commodities which were not within the scope of his certified authority. At the suggestion of the Director of the Bureau of Motor Carriers at Washington, D. C.,

plaintiffs herein filed with the Commission a "Petition for Review and Correction of the Commodity Descriptions" in their certificates. The Commission referred the matter to Joint Board 13 for hearing. The Board heard testimony and, in its report, the Board set forth a dictionary definition of groceries as "household supplies for the table, such as are dealt with by grocers." The Board also stated "The Bureau of Motor Carriers has formally expressed the opinion that groceries include any article for human consumption which is customarily served as food, or is a substance entering into the preparation of foods in the home, except fresh meats." However, the Joint Board found John Bird had actually transported a wider range of commodities than was authorized by the certificate granted June 24, 1941 to his successor in interest, and recommended that the certificates should be revised in several respects including "such merchandise as is dealt in by wholesale and retail grocery stores."

Exceptions were filed to the report of the Joint Board and the matter was reviewed by Division 5 of the Commission, which rejected plaintiffs' interpretation of the term "groceries." It was plaintiffs' position there, as it is here, that the term "groceries" in their certificates includes any commodity sold in a retail or wholesale grocery establishment. However, the Division held that Bird had, prior to June 1, 1935 and thereafter, been engaged in transporting, in addition to "groceries" and "canned goods," dog-food, washing and cleaning supplies and paper products, and therefore authorized the issuance of authorities which would permit plaintiffs to transport such items. The Report of Division 5 stated:

"The evidence is convincing that both John and Julia Bird contemplated that such term ('groceries') included commodities other than those falling within the definition adopted by the Bureau as heretofore described. Items such as dog-food, soap, cleaning and washing compounds, toilet tissue, and paper napkins are not groceries, but they have become so universally associated with the sale of groceries as to place them in the same general category."

Plaintiffs petitioned the entire Commission for reconsideration of the decision of Division 5. On November 17, 1952, the full Commission, with two Commissioners dissenting, issued its report and decision. It affirmed the interpretation which the Division had placed on the term "groceries," viz., "articles for human consumption which are customarily served as food, or which are used in the preparation of food, except fresh meat." However, the Commission held that plaintiffs were not entitled under the "grandfather" clause to have their operating authorities broadened, and their certificates modified to permit them to transport dog-food, washing and cleaning supplies and paper products. It was the Commission's view that the actual scope of Bird's operation on June 1, 1935 was immaterial because the "application was finally determined upon the issuance to Julia Bird of a certificate in June, 1941."

The Commission argues that when Julia Bird received her certificate of authority in 1941 and later, when she sold her certificate to Schaefer on August 8, 1945, no objection was made by her or Schaefer as to the scope of the term "groceries" as used in said certificate. That is true, but on those dates there was no reason why Mrs. Bird or Schaefer should have known or even suspected that some department or group within the Commission had decided upon a greatly restricted meaning of the term "groceries." The Commission's brief states that while no formal administrative ruling had been made " * * * yet the Bureau of Motor Carriers of the Commission had a settled definition of what was included in the term 'groceries', long before August 8, 1945."

The Commission calls attention to two instances of a communication to an in-

dividual carrier by the Director of the Bureau of Motor Carriers in one instance and by the Chief Attorney of that Bureau in another, as to what these two gentlemen believed was the meaning of the term "groceries." Apparently these views were not made known to the public generally for there was no publication of the same. The Commission also invites our attention to a memorandum issued by the Bureau of Motor Carriers on June 15, 1946. This was ten months after the transfer of the Bird certificate to Schaefer. Again, there is no showing that this memorandum which was addressed to "Washington and Field Staff" was made available to the public. In fact, as late as 1948, the Commission itself recognized there had been no formal adoption of the restricted definition of "groceries" as in its decision in Hazelwood Extension-Packing House Products, 49 M.C.C. 53, 58, the Commission stated " * * * Our Bureau of Motor Carriers has *informally expressed the opinion* (emphasis supplied) that groceries include any article for human consumption which is customarily served as food or is a substance entering into the preparation of foods in the home, except fresh meats." In fact, we do not find that the Commission formally adopted the restricted definition of "groceries" before 1952.

The Commission suggests that if Mrs. Bird was not satisfied with the commodity description of "groceries" appearing in her authority, she should have made inquiry of or registered some complaint with the Commission. We think there was no occasion for making such a suggested inquiry. She knew of the items of inedible commodities such as soap, paper products, washing compounds and dog-food, which her husband had transported both before and after June 1, 1935. She not only had kept the books and records for her husband, but at times had driven the trucks. It was not unreasonable for her to assume such items were included in the classification of "groceries". In its decision, Division 5 of the Commission stated: "The evidence is convincing that both John and Julia Bird contemplated that such term ('groceries') included commodities other than those falling within the definition adopted by the Bureau as heretofore described."

█ The argument that plaintiffs are estopped to insist on their definition of "groceries" because Mrs. Bird did not object to that term in her certificate of authority when issued, has as little merit as plaintiffs' argument that the Commission is estopped to urge its definition because the Commission did not object when the Birds and Schaefer tendered tariffs for filing with the Commission, said tariffs listing some non-edible commodities. There are many thousands of tariffs filed with the Commission. It would be almost an impossible task to check every tariff tendered for filing, against the provisions of the thousands of certificates of authority which have been issued to carriers. We hold that the fact that the Commission did not object to the inclusion of certain articles in a particular commodity list included in tariffs sent to the Commission for filing, does not prevent the Commission from passing on the correctness of such classification in a proper proceeding. Pomprowitz v. United States, 1954, 119 F.Supp. 824 (3 judge court), affirmed 348 U.S. 803, 75 S.Ct. 42, 99 L.Ed. 634.

██ The principle is well established that the construction of the scope of its certificates is for the Commission, and that such construction will not be overturned by the courts unless arbitrary or clearly erroneous. Pomprowitz v. United States, supra; United Truck Lines, Inc., v. Interstate Commerce Commission, 9 Cir., 189 F.2d 816; Dart Transit Co. v. Interstate Commerce Commission, D.C., 110 F.Supp. 876; Adirondack Transit Lines, Inc., v. United States, D.C., 59 F.Supp. 503, affirmed 324 U.S. 824, 65 S.Ct. 688, 89 L.Ed. 1393. Therefore, the Commission was acting clearly within its powers in defining "groceries," when appearing as an item

in operating authorities, to include "any article for human consumption which is customarily served as food, or is a substance entering into the preparation of food in the home, except fresh meats." We cannot say as a matter of law that this definition is arbitrary or clearly erroneous. However, our conclusion on this point is not determinative of this litigation.

Division 5 of the Commission frankly admits that neither John nor Julia Bird knew of the restricted definition of "groceries" which was adopted formally by the Commission in 1952. It seems clear that the term "groceries" was ambiguous. The definitions contended for by the parties to this lawsuit demonstrate two widely differing viewpoints as to the proper meaning of the term. As an ambiguity did exist, Division 5 of the Commission was correct in giving consideration to testimony as to commodities which Bird was transporting in interstate commerce on June 1, 1935.

Under the socalled Grandfather Clause of § 206(a), the Commission was to grant to any motor carrier in bona fide operation on June 1, 1935, and who had so operated since that time, a certificate to continue such operation, and there was no obligation on the carrier to establish that public convenience and necessity be proven, provided the carrier made application within 120 days of the effective date of the statute.

The Supreme Court has stated that the Commission should not deny " * * * that substantial parity between future operations and prior bona fide operations which the statute contemplates." Alton Railroad Co. v. United States, 315 U.S. 15, 22, 62 S.Ct. 432, 437, 86 L.Ed. 586. One of the purposes of the grandfather clause was to permit the continued operation of a carrier business that was established on June 1, 1935. Transamerican Freight Lines, Inc., v. United States, D.C., 51 F.Supp. 405. Another court stated the grandfather clause in this chapter was inserted to avoid the hardship which would

result from forcing a carrier to justify his existing business in terms of public convenience. Said clause recognized as vested such rights as had grown up before Congress asserted any public interest in motor transportation. Hence, rights protected should be measured by past user. Crescent Express Lines, Inc., v. United States, D.C., 49 F.Supp. 92, affirmed 320 U.S. 401, 64 S.Ct. 167, 88 L.Ed. 127.

In Eastern Carrier Corporation v. United States, D.C.1939, 31 F.Supp. 232, 238, at page 238, the court said: " * * It was obviously the intention of Congress by the enactment of the grandfather clause to preserve to the carrier its right to transport commodities or articles in commerce of the kind which it was transporting on June 1, 1935. If the plaintiff's predecessor was engaged in the bona fide transportation of merchandise generally at the grandfather date and this transportation was carried on by the plaintiff thereafter, a certificate of public convenience and necessity to continue that transportation should have been granted by the Commission."

We think the Commission should have given consideration to the testimony in this record showing items actually transported by John C. Bird before and after June 1, 1935 which were beyond the scope of the presently approved definition of "groceries." The Joint Board which heard the evidence, and Division 5 of the Commission readily came to the conclusion that Bird was entitled to carry certain items usually offered for sale in grocery stores which would not be included within the scope of the definition approved by the Commission. There was credible evidence to sustain the finding of Division 5 that the evidence clearly established the transportation by John C. Bird, before and after June 1, 1935, of canned goods, dogfood, washing and cleaning supplies and paper products.

We hold that the order of the full Commission is void for the reason that the Commission failed to give any considera-

tion to the testimony hereinbefore described. Plaintiffs did not have a fair hearing. A similar conclusion was reached by a three-judge court in Salvino v. United States, D.C., 119 F.Supp. 277. There the court reviewed a cease and desist order issued by the Commission. Salvino held a certificate authorizing him to transport "factory supplies." The Commission ordered him to cease transporting ingredients of the product manufactured at the factories he served. It declined to accept testimony as to the meaning of the term "factory supplies." The decision of the court in effect was that the refusal of the Commission to examine evidence of the commodities transported by a holder of a certificate under the grandfather clause was improper and that a fair hearing had not been held.

In Black v. Interstate Commerce Commission, 5 Cir., 167 F.2d 825, 827, the carrier's certificate authorized transportation of "machinery and machinery parts." There the Commission itself introduced evidence of the previous operations of the carrier to show that it had not transported automotive parts, and that, therefore, such parts were not included in his operation authority.

■ In answer to the argument of the Commission that the plaintiffs should be barred because of laches, we approve of the statement of the Court in Motor Freight Express v. United States, D.C., 119 F.Supp. 298. The court there stated, at page 305, "Nor do we think that Branch can be charged with such laches as to deprive the commission of power to act in this case. One can hardly be said to have delayed unreasonably in acquiring rights which he justifiably believed he had acquired years ago. Branch's clarification petition was filed shortly after its operating rights were questioned." In the case at bar, plaintiffs' petition was likewise filed shortly after some competitors had filed complaints with the Commission.

This court is without power to perform the functions of the Commission. However, it is our duty to declare that the order entered by the Commission on November 17, 1952 is erroneous and void because the Commission refused to give any consideration to the evidence in this record of the scope of Bird's actual operations as of June 1, 1935 and thereafter. To enforce the Commission's order would deprive the plaintiffs of valuable rights without due process of law. Judgment may be entered enjoining the Commission from enforcing its order of November 17, 1952.