Ronald A. PATTERSON, d/b/a Anthony & Patterson Truck Line, Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

Civ. A. No. 722.

United States District Court
W. D. Arkansas,
Texarkana Division.

Dec. 11, 1959.

772

Louis Tarlowski, Little Rock, Ark., for plaintiff.

Charles W. Atkinson, U. S. Atty., Ft. Smith, Ark., Carroll T. Prince, Jr., Atty., Interstate Commerce Comm., Washington, D. C., for defendants.

Before WOODROUGH, Circuit Judge, and JOHN E. MILLER and HENLEY, District Judges.

MILLER, JOHN E., District Judge.

This is an action to vacate and set aside an order of the Interstate Commerce Commission dated May 9, 1958, which denied plaintiff's application for additional authorization to operate as a motor common carrier in interstate commerce and for affirmative relief.

Plaintiff is a citizen of Arkansas and resides at Ashdown in the Western District. He has been engaged in the transportation of lumber by motor vehicle in interstate commerce pursuant to a Certificate of Public Convenience and Necessity authorizing operations between Ashdown, Arkansas, and points within 125 miles.

On August 5, 1957, plaintiff filed with the Interstate Commerce Commission five applications for authority, in general, to operate as a motor common carrier of lumber, certain wood articles, and feed to or from points in Arkansas, Louisiana, and numerous other states.[1] These applications were docketed by the Commission, and were referred to an examiner for a formal hearing which was held on September 30 and October 1, 1957, at Little Rock, Arkansas. Plaintiff introduced evidence in support of all

---

1. Sub-No. 11: Wooden poles, wooden piling (treated and untreated), and treated timbers, between points in Arkansas, Louisiana, and Texas.

Sub-No. 12: Milled and processed livestock, animal, and poultry feed, in bags and in bulk, from points in Illinois and Missouri to points in Arkansas, Louisiana, and Texas.

Sub-No. 13: Lumber, wooden pallets, fabricated wooden products, and wooden boxes, in truckload lots, between points in Arkansas, Louisiana, and Oklahoma.

Sub-No. 14: Treated and untreated wooden poles and piling from points in Arkansas, Texas, and Louisiana to points in Mississippi, Tennessee, Indiana, Michigan, Illinois, Missouri, Colorado, Kansas, Nebraska, Oklahoma, and Kentucky.

Sub-No. 15: Lumber, wooden pallets, fabricated wooden products, wooden boxes, poles, piling, treated and untreated, and treated timbers, between points in Arkansas and Louisiana, on the one hand, and, on the other, points in Mississippi, Tennessee, Indiana, Michigan, Illinois, Missouri, Colorado, Kansas, Nebraska, Texas, Oklahoma, and Kentucky.

the applications. Numerous rail and motor carriers appeared in opposition. After the hearing the examiner issued his report and recommended order proposing that all the applications be denied. Plaintiff thereupon filed exceptions to the examiner's report and recommended order, to which numerous parties replied. On May 9, 1958, the Commission entered a report and order finding that the plaintiff had failed to establish that the present or future public convenience and necessity required the granting of the applications. Accordingly, the applications were denied.

Plaintiff thereafter filed a petition for reconsideration of Sub-No. 15 only, and several parties replied thereto. On October 8, 1958, the Commission entered an order denying the petition for reconsideration, thus terminating the administrative proceeding.

The present action was instituted April 4, 1959, with the filing of a complaint against the United States and the Interstate Commerce Commission. A three-judge court was duly convened. Oral arguments were heard on September 3, 1959, and at the conclusion of the arguments the case was submitted.

It should be noted that the complaint attacks only the portion of the Commission's order relating to Sub-No. 15. The issues were further narrowed by the plaintiff prior to the beginning of oral arguments by abandoning all portions of Sub-No. 15 except those seeking authority (1) to transport lumber from Danville and Zwolle, Louisiana, to points in Mississippi; (2) to transport lumber from Mt. Holly, Arkansas, to points in Illinois; and (3) to transport lumber from Springhill, Louisiana, and Urbana, Arkansas, to points in Illinois.

■ The scope of the review by the court in a case of this kind is limited to a determination of whether the Commission's action is supported by substantial evidence. In United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, at page 535, 66 S.Ct. 687, at page 698, 90 L.Ed. 821, the Supreme Court said:

"We think the court misconceived not only the effects of the Commission's action in these cases but also its own function. It is not true, as the opinion stated, that ' * * * the courts must in a litigated case, be the arbiters of the paramount public interest.' This is rather the business of the Commission, made such by the very terms of the statute. The function of the reviewing court is much more restricted. It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law."

■ The weight to be given by the Court to an administrative finding is well established. In Interstate Commerce Commission v. Union Pacific Railroad, 222 U.S. 541, 547, 32 S.Ct. 108, 111, 56 L.Ed. 308, the Supreme Court observed that it would "not consider the expediency or wisdom of the order, or, whether, on like testimony, it would have made a similar ruling." In Georgia Public Service Commission v. United States, 283 U.S. 765, 775, 51 S.Ct. 619, 623, 75 L.Ed 1397, the court said:

"It is not our province to enquire into the soundness of the Commission's reasoning, the wisdom of its decisions, or the consistency of its conclusion with those reached in similar cases."

In a recent case arising in this circuit, involving a similar order of the Interstate Commerce Commission, Judge Devitt, speaking for a three-judge court, said in Quickie Transport Co. v. United

States, D.C.D.Minn.1959, 169 F.Supp. 826, 828, affirmed by the Supreme Court per curiam, 80 S.Ct. 140:

"As is well established, the authority of courts in reviewing the actions of an administrative body are very limited. We are confined to determining whether there is warrant in the law and the facts for the Commission's action. We can go no further. We cannot substitute our judgment for that of the Commission or challenge the wisdom of its action. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 227, 228, 63 S.Ct. 589, 87 L.Ed. 724. For further recent expression of our limited authority in this respect, see Canadian Pacific Railway Co. v. United States, D.C., 158 F.Supp. 248; Minneapolis & St. Louis Railway Co. v. United States, D.C., 165 F.Supp. 893."

The Commission is the fact-finder, and the judicial function is exhausted when there is found to be a rational basis for the conclusions reached by the administrative body. Southern Kansas Greyhound Lines v. United States, D.C. W.D.Mo.1955, 134 F.Supp. 502. With these limitations in mind, we proceed to an examination of the evidence presented to the Commission relative to the three routes now in dispute. It should be borne in mind that the burden of proof before the Commission was upon the plaintiff. It was his duty to support the applications by specific credible evidence particularly applicable and relative to the applications or portion of the application now before the Court.

The first authority now sought is that to transport lumber from Danville and Zwolle, Louisiana, to points in Mississippi. The evidence indicated that both of the Louisiana towns are located on railroads. On July 8, 1957, the plaintiff received temporary authority to transport lumber on this route. This temporary authority terminated on October 8, 1958, when the Commission denied the plaintiff's petition for reconsideration. George Biscomb, Sales Manager for the Hunt Lumber Comany, testified before the examiner in support of this application. He stated that he desired service from these points to several states, including Mississippi. He had not determined if any other carriers have authority to transport lumber between these points. Under the plaintiff's temporary permit he transported one shipment from Zwolle to Mississippi and 16 shipments from Danville to Mississippi. The destination points in Mississippi were all served by railroads. Biscomb stated that his needs for truck transportation in the past had been met "pretty well" by using his own equipment and that of his customers.

The second authority now sought is that of transporting lumber from Mt. Holly, Arkansas, to points in Illinois. Mt. Holly, Arkansas, is not served by railroad. The nearest railhead is eleven miles distant.

Vernon Whitten testified concerning his sawmill located at Mt. Holly. He indicated that he is seeking new markets in Indiana, Illinois, Missouri, and Kentucky. His shipments to Illinois in the immediate past have been made by using the customers' trucks. At other times he has used the Melton Truck Line and the Hoskins Truck Service, but has had some complaints as to their service. He is not familiar with their present service, and has not checked on other motor carriers authorized to service routes from Mt. Holly.

The third route for which authority is sought is that between Urbana, Arkansas, and Springhill, Louisiana, to destinations in Illinois. Both Urbana and Springhill are located on railroads. Apparently no motor carrier is presently authorized to transport lumber from these points to Illinois. However, interline [2] service is available.

2. An interline motor carrier movement is, as described by the Supreme Court, "the interchanging of trailers between an originating carrier and another carrier when

Bruce Anthony, manager of lumber mills located at Springhill and Urbana, testified in support of plaintiff's application. Seventy percent of his shipments go by rail. At the time of the hearing Anthony had orders on file for 30 loads of lumber to be shipped to Illinois. He had shipped some lumber to Illinois in customers' trucks. He had contacted Melton Truck Line in the past year, but it did not have a truck available at the desired time. No details were given. No other motor carrier has solicited him for business. Rail service to Illinois is not adequate as some of his customers there are not located on rail sidings, and loading methods into trucks are more economical. Anthony stated that if the plaintiff's application was denied, he would add to his own equipment and make delivery to his Illinois customers using his own trucks.

The plaintiff's original request to the Commission was for authority to transport a variety of products over a 14-state area. The evidence was presented, and the examiner and the Commission acted on this broad application. The supporting shippers referred to above all sought wider coverage than the three routes now in issue. Much of their testimony was therefore of a general nature in reference to a number of routes and destinations, and was not restricted to the three routes now before us.

Biscomb supported additional motor carrier service for the plaintiff from Danville and Zwolle, Louisiana, not only to Mississippi but also to eight other states. Whitten's testimony supported the plaintiff's application for hauling lumber from Mt. Holly, Arkansas, to Indiana, Missouri, and Kentucky as well as Illinois. Anthony testified in support of the plaintiff's requested routes into Missouri, Michigan, and Oklahoma, in addition to Illinois.

Since the supporting evidence was in reference to a variety of routes and destinations, it is difficult to pinpoint it as to the three routes now sought. The Commission held that in regard to the original broad application, the evidence offered was too general and indefinite to warrant the grant of authority sought. Even when the evidence relating to the three routes now in question is segregated, we can only reach the same conclusion. While there may be some need for additional service on these routes, the evidence offered was so general and indefinite and so intertwined with the other requested routes that we cannot say the Commission's action is not supported by substantial evidence.

However, in view of the breadth of the original applications; the effort by the petitioner at the original hearing to support in toto by testimony the consolidated applications; the subsequent abandonment by the petition for reconsideration of all the applications except Sub-No. 15, and the further limitation of Sub-No. 15 in the oral argument to the Court; we trust that should petitioner file another application or applications limited to the routes covered by the oral argument to the Court, that the Commission will proceed to hear and consider such limited application or applications without regard to the conclusion now reached and disposition made on the record before the Court.

Therefore, an order is being entered today dismissing the complaint of plaintiff.

the latter serves an area not served by the former." Bibb v. Navajo Freight

Lines, 359 U.S. 520, 527, 79 S.Ct. 962, 966, 3 L.Ed.2d 1003.