ZUZICH TRUCK LINE, INC., Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

Crouch Brothers, Inc., and Navajo Freight Lines, Inc., Intervening Defendants.

Civ. A. No. KC–1640.

United States District Court
D. Kansas.

Oct. 11, 1963.

———◆———

Clarence D. Todd, of Todd & Dillon, Washington, D. C., Charles W. Singer, Chicago, Ill., Lowell L. Knipmeyer, of Knipmeyer, McCann & Millett, Kansas City, Mo., for plaintiff.

Lee Loevenger, Asst. Atty. Gen., John H. D. Wigger, Attorney, Dept. of Justice, Newell A. George, U. S. Atty., Robert W. Ginnane, Gen. Counsel, and Fritz R. Kahn, Asst. Gen. Counsel, for defendants.

Joseph Cohen, Kansas City, Kan., Louis Kranitz, St. Joseph, Mo., John C. Bradley and Rice, Carpenter & Carraway, Washington, D. C., for intervening defendant, Crouch Brothers, Inc.

James F. Miller, Kansas City, Mo., for intervening defendant, Navajo Freight Lines, Inc.

Before HILL, Circuit Judge, and STANLEY and DAUGHERTY, District Judges.

HILL, Circuit Judge.

This is an action under 28 U.S.C. §§ 1336, 1398, 2284, 2321–2325 and 5 U.S.C. § 1009, to enjoin, annul and set aside the report and orders of the defendant, Interstate Commerce Commission, entered in Docket No. MC–C–2156, Zuzich Truck Line, Inc., Investigation and Revocation of Permit, 83 M.C.C. 625 (the investigation proceeding). That report also embraces the action taken by the Commission in Docket No. MC–69752, Zuzich Truck Line, Inc., Modification of Permit (the grandfather proceeding); Docket No. MC–69752 (Sub. No. 17), Zuzich Truck Line, Inc., Extension-Various Commodities (the extension proceeding); and Docket No. MC–69752 (Sub. No. 16), Zuzich Truck Line, Inc., Conversion Proceeding (the conversion proceeding).

At the time the above proceedings were commenced, the plaintiff, Zuzich Truck Line, Inc. (Zuzich), was the holder of a contract carrier permit authorizing it, insofar as pertinent here, to transport in interstate commerce "Packinghouse products, and supplies, restricted to items incidental to and directly connected with the business of the slaughtering of animals and the preservation and sale of meats but not including dairy products" and "canned goods" as set forth in paragraphs 1 and 4(A), respectively, of such permit, between points and places therein designated. This permit in its entirety is attached as Appendix A to the Commission's report, supra, 83 M.C.C. at pages 639–641, and was originally issued to George Zuzich, an individual, under the so-called "grandfather" provisions of Section 209(a) of the Interstate Commerce Act, 49 U.S.C. § 309(a). The four proceedings were referred to a Commission Examiner. The investigation, grandfather and extension proceedings were heard upon a consolidated record and the conversion proceeding was heard on a separate record; but, all of them were the subject of a single report by the Examiner as well as the Commission. For purposes of clarity we will, insofar as possible, discuss them separately.

### The Investigation Proceeding

By order dated October 24, 1957, Division 1 of the Interstate Commerce Commission (Commission) instituted an investigation under the authority of Sections 204(c) and 212(a) of the Act, 49 U.S.C. §§ 304(c) and 312(a), into and concerning the contract carrier operations of Zuzich. The purpose of the investigation was to determine whether Zuzich, as a contract carrier by motor vehicle, in interstate commerce, of packinghouse products and canned goods, had engaged in the transportation of commodities not within the scope of its permit, in violation of Section 209(a) of the Act, 49 U.S.C. § 309(a).

The operations in question consisted of the alleged transportation in interstate commerce of such commodities as the following: Washing compounds (liquid and granules); hydrogenated cotton-seed oil; vegetable-oil shortening; soap; glycerine, in drums; advertising material; sporting goods; jelly, in drums; frozen fruit juice; macaroni products; lemon concentrate; frozen chop suey and egg rolls; spaghetti and spaghetti products; garlic, in bags; canned meats; peanut butter; noodles; oleomargarine; salad oils; edible flour; powdered spice; fresh frozen vegetables; citrus and prune juices; food curing compounds; pickles, in barrels and kegs; tea; frozen citrus juices; and candy. At the hearing, the Commission's Bureau of Inquiry and Compliance (Bureau) as illustrative of the alleged unlawful operations, produced evidence showing that Zuzich had, in fact, transported approximately 51 shipments containing quantities of the above mentioned commodities, in interstate commerce, during the period from December 31, 1956, to September 10, 1957.

The Bureau's position was that the transportation of these commodities by Zuzich was not within the scope of its permit authorizing it to haul "packinghouse products" and "canned goods". Zuzich readily admitted that it had transported such commodities but contended, with one exception, that it was authorized to do so under the above authority as set forth in paragraphs 1 and 4(A) of the permit. The single exception was the advertising material which Zuzich claimed the right to transport, not on the basis of any asserted authority, but because it and its predecessor purportedly had transported this material since prior to July 1, 1935.

During the course of the hearing, and in particular the examination of the Commission's employee and witness, Schrier, Zuzich made two requests for the production of Commission documents which it claimed were material to both the investigation and grandfather proceedings. The first request was for a report made by Schrier to his superior at the conclusion of his field investigation into Zuzich's operations, which ultimately resulted in the commencement of the instant proceeding. The second request was for reports and other material contained in the Commission's files which allegedly relate to the interpretation and issuance of Zuzich's "grandfather" permit. Both requests were denied by the Examiner and his rulings were sustained by the Commission. Zuzich assigns this as error.

The Examiner found that Zuzich had engaged in operations beyond the scope of its authority in transporting the commodities in question in interstate commerce; but, recommended that no cease and desist order should be entered in view of his recommended findings in the reopened grandfather proceeding. The Commission agreed with the Examiner's findings as to the unlawful operations by Zuzich; but, disagreed with his conclusion and ordered Zuzich to cease and desist from continuing such transportation.

The record discloses that the report and files were requested, not for use upon cross-examination of any witness, but, to determine if the formal investigation had been commenced as a result of Schrier's field investigation or as a result of a complaint by another carrier and to ascertain the interpretation placed upon Zuzich's permit by the Commission's employees while in the process of han-

dling the grandfather application. It is admitted by Zuzich's counsel that the material he desired from the files would probably be confidential material.

We, of course, agree with Zuzich that it was entitled to a full, fair and open hearing as a prerequisite to the validity of the Commission's orders. Morgan v. United States, 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129. But this does not mean that the Commission was required to furnish internal reports or open up its confidential files to Zuzich to be used for the stated purposes. We think the case of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, is wholly inapplicable here. And, the Jencks Act, 18 U.S.C. § 3500, is not helpful to Zuzich as it applies only to discovery in a criminal prosecution. Campbell v. Eastland, 5 Cir., 307 F.2d 478, 486, cert. denied, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502.

Zuzich further argues that the Commission's files should at least have been turned over to the trier of facts for an *in camera* inspection of the documents so as to determine which of them were not confidential and clearly relevant to the issues before him. The simple answer to this argument, even if it is assumed that such a procedure was proper, is that no request for such an inspection was made by Zuzich.

The primary issue raised in this proceeding was whether Zuzich, by transporting the commodities in question, engaged in operations not within the scope of its permit in violation of 49 U.S.C. § 309(a). That section, in pertinent part, provides that " * * * no person shall engage in the business of a contract carrier by motor vehicle in interstate or foreign commerce on any public highway * * * unless there is in force with respect to such carrier a permit issued by the Commission, authorizing such person to engage in such business: * * *."

The term or description "packinghouse products" as used in Zuzich's permit has long had a peculiar meaning of its own in the transportation industry. A long list of the commodities that may be transported under the description was first promulgated by the Commission in Modification of Permits—Packing House Products, 46 M.C.C. 23, 33–34 (1945), and later modified in 48 M.C.C. 628, 636 (1948). This list was republished with minor changes in Descriptions in Motor Carrier Certificates, 61 M.C.C. 209, 272–273. It would serve no useful purpose and would only unduly extend this opinion to set forth that list of commodities herein. Suffice it to say that the list does include many, if not all, of the commodities in question. However, it is well settled, by both Court and Commission decisions, that carriers possessing permits or certificates of public convenience and necessity authorizing them to transport "packinghouse products" are limited to the transportation of such commodities as come within the meaning of that term and, then, only when they are produced or distributed by, and transported for, or to, a *meat packinghouse*. See, e. g., Morehouse v. United States, 194 F.Supp. 940 (D.Neb.1961), aff'd 368 U.S. 348, 82 S.Ct. 385, 7 L.Ed.2d 342; Dart Transit Co.—Investigation of Operations, 54 M.C.C. 429, sustained, Dart Transit Co. v. Interstate Commerce Commission, 110 F.Supp. 876 (D.Minn.1953); Argo-Collier Trucklines Corp. Est.—Cleaning Compounds, 83 M.C.C. 433; Haugarth-Investigation and Revocation of Certificate, 83 M.C.C. 395; Safeway Truck Lines, Inc.—Investigation of Certificate, 74 M.C.C. 679; Chrispens Truck Lines, Inc.—Investigation of Operations, 63 M.C.C. 625.

The term "canned goods" has also acquired a well established meaning in the industry. It has generally been held that the commodity must be a sterile, bacteria-free food and that its container must be hermetically sealed, of necessity, to maintain its first and intended state. These are the two indispensables of "canned goods" and without them the commodity is not of that category. See, e. g., Snyder Bros. Motor Freight, Inc. v. Archie's Motor Freight, Inc., 79 M.C.C.

398, sustained, Archie's Motor Freight, Inc. v. United States, 14 Fed.Carr.Cas., Paragraph 81, 324 (E.D.Va.1960); Bird Trucking Co.—Modification of Certificate, 61 M.C.C. 311, 314, 315, rev'd on other grounds, Bird Trucking Company v. United States, 159 F.Supp. 717 (W.D. Wis.1955).

Zuzich argues that by applying the foregoing definitions of the two terms, "packinghouse products" and "canned goods", to determine the lawfulness of its questioned operations, the Commission applied a definition of the authority contained in its permit which was developed many years after the permit was issued. This, it asserts, deprived it of rights without due process of law. We do not agree. The Commission has merely interpreted the meaning of the permit by applying well established definitions to the terms thereof. Such an interpretation "being simply a definitive declaration of what rights existed from the very beginning under the permit, cannot be equated with modification, however, unless found to be clearly erroneous." Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 558–559, footnote 4, 78 S.Ct. 496, 499, 2 L.Ed.2d 484. No such finding is warranted here.

Zuzich also argues that in deciding the lawfulness of the operations in question, the Commission ignored contemporaneous interpretations, made by its own personnel, of the authority contained in the permit. Its position apparently is that the Commission is, in effect, estopped to question the legality of such operations by virtue of certain letters from Commission employees to its predecessor which it interprets as authorization to transport the commodities for any shipper. We find no merit to this contention.

It is therefore apparent that Zuzich was not authorized under its permit to transport any of the commodities in question since those commodities were either transported for shippers not engaged in the business of operating meat packinghouses or do not come within the accepted definition of canned goods. Accordingly, the cease and desist order was properly entered by the Commission unless, as Zuzich asserts, it was entitled to an enlargement of its "grandfather" rights.

### The Grandfather Proceeding

Subsequent to the commencement of the investigation proceeding, Zuzich sought, by petition, to reopen the "grandfather" docket and obtain a modification of its permit so that authority would be granted to transport all of the items covered by the investigation proceeding. It sought leave to show that prior to, and continuously since, the statutory date of July 1, 1935, it and its predecessor had transported the commodities involved in the investigation proceeding and, that therefore it was entitled pursuant to 49 U.S.C. § 309(a) to have its "grandfather" rights enlarged so as to permit the transportation of these commodities free from any doubt as to the legality of such operations. Zuzich alleged in its petition that its terminal in Kansas City, Kansas, was flooded in the summer of 1951, and only a small amount of positive documentary evidence showing that it had engaged in the operations described in the requested modification since prior to July 1, 1935, was saved; but, this documentary evidence together with oral testimony, as set forth in affidavits attached to the petition to substantiate these allegations, would establish its right to such authority.

The "grandfather" docket was reopened for oral hearing on the allegations of Zuzich's petition on a consolidated record with the investigation and extension proceedings. At the hearing Zuzich introduced documentary evidence showing that it had transported some shipments of "packinghouse supplies" and two shipments of "packinghouse products" for a meat packinghouse prior to July 1, 1935. It also introduced exhibits in the form of contracts dated prior to July 1, 1935, providing for the transportation by Mr. Zuzich of many of the commodities in question. Zuzich also

presented a list showing hundreds of shipments of the commodities here in question for a five-year period up to and including 1957. These shipments were for both meatpacking and non-meatpacking companies with the tonnage for the latter greatly exceeding that for the former.

In addition to this documentary evidence, plaintiff also presented considerable oral testimony, which is summarized in Appendix E of the Commission's report, supra, 83 M.C.C. at pages 645–647, and will not be detailed here. In substance, this testimony was that the witnesses were familiar with George Zuzich's operations prior to the critical date, i. e., July 1, 1935, and recalled that the commodities in question had been transported by George Zuzich prior to that time. However, their testimony does not indicate the quantity or regularity of such transportation and, in general, established that the majority, if not all, of the shipments of these commodities were either picked up or delivered at one or the other of the meat packinghouses which were served by Mr. Zuzich.

The background facts leading up to the issuance of the "grandfather" permit to George Zuzich are set forth in great detail in Appendix D of the Commission's report, supra, 83 M.C.C. at pages 642–644. We have carefully reviewed and considered those facts and need not summarize them here. It is sufficient to say they clearly show that prior to, and since, the issuance of the permit held by Zuzich as the successor of George Zuzich, it had undergone numerous changes and enlargements.

The Examiner found that Zuzich and its predecessor had been engaged in bona fide operations, to the extent claimed, on and continuously since July 1, 1935, and recommended that its permit be modified as requested. In view of this conclusion, he recommended that Zuzich's extension application be denied. Exceptions were filed to these findings and recommendations. The Commission disagreed with the Examiner and, in denying the re-

quested modification, stated (83 M.C.C. at page 635):

"We are of the opinion that the respondent's evidence falls short of substantiating the allegations contained in the instant petition. The involved 'grandfather' permit has received consideration and review on numerous occasions during the past 20 to 25 years. The numerous compliance orders entered by this Commission were modified several times at the request of respondent's predecessor. Now, after many years have elapsed and a permit pursuant to the compliance orders has been issued, we do not believe that the authority contained therein should be modified in the absence of clear and convincing evidence of continuous operations performed since prior to July 1, 1935. Zuzich, Inc., in its petition which motivated the reopening of this proceeding, claimed to have such evidence available, but it was not forthcoming at the hearing. We, therefore, conclude that the petition herein to the extent that it seeks modification of the authority held by Zuzich, Inc., should be denied."

Zuzich argues that the Commission denied the petition primarily upon a finding that the evidence "falls short" of substantiating the allegations of the petition for modification of the permit, which finding, Zuzich says, was predicated entirely upon a review of the documentary evidence and did not take into account any of the oral testimony adduced in its behalf. Zuzich claims that, having reopened the grandfather case, the Commission should have decided the basic issue, i. e., whether the permit should be modified or enlarged as requested, rather than attempting to compare and correlate the evidence with the allegations of the petition. It further argues that the Commission was influenced by the previous history of the "grandfather" permit and that the basic issue "is not dependent upon substantia-

tion of allegations contained in the petition for reopening, nor upon the extent of past reviews of the proceeding."

The grandfather provisions of 49 U.S.C. §§ 306(a) and 309(a) are referred to as the "grandfather clause" of the Act. Section 309(a) provides that the Commission shall issue a permit to any carrier if it, or its predecessor in interest, " * * * was in bona fide operation as a contract carrier by motor vehicle on July 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, * * *." This clause confers a special privilege upon those carriers coming within its terms and extends only to carriers plainly within its terms. Crescent Express Lines, Inc. v. United States, 320 U.S. 401, 409, 64 S.Ct. 167, 88 L.Ed. 127; Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 83, 62 S.Ct. 932, 86 L.Ed. 1283; McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 83 L.Ed. 164. It contemplates "substantial parity" between future operations and prior bona fide operations as of the statutory date. Crescent Express Lines, Inc. v. United States, supra; Alton Railroad Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586. An applicant for a grandfather permit under this clause need not prove that the proposed operations would be consistent with the public interest; he, or it, is entitled to the permit, as a matter of right, upon proof of substantial bona fide operations on and continuously since the statutory date. Motor Freight Express v. United States, 119 F.Supp. 298, 303 (M.D.Penn.1954), aff'd, 348 U.S. 891, 75 S.Ct. 215, 99 L.Ed. 700.

Under the statute, actual and substantial rather than merely potential, sporadic or infrequent, service by the applicant is required before a grandfather permit can be issued. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 480, 481, 62 S.Ct. 722, 86 L.Ed. 971; Gregg Cartage & Storage Co. v. United States, supra; United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162; Motor Haulage Co. v. United States, 70 F.Supp. 17 (E.D.N.Y.1947), aff'd, 331 U.S. 784, 67 S.Ct. 1205, 91 L.Ed. 1815.

It is well settled that the applicant has the burden of establishing his right to the statutory grant or, in other words, of meeting the standard of proof set forth above. Alton Railroad Co. v. United States, supra; Watson Bros. Transp. Co. v. United States, 59 F.Supp. 762 (D.Neb.1945). Thus, it was incumbent upon Zuzich to prove that it was engaged in the operations in question continuously since prior to the statutory date of July 1, 1935, and that such operations were actual and substantial, rather than potential, sporadic or infrequent. Since it had this burden, Zuzich was necessarily required to prove the allegations of its petition for modification of the permit. Accordingly, it is clear that the Commission, by finding that the evidence "falls short" of substantiating the allegations of the petition, did not depart from established principles and establish an entirely new concept. By its finding in this regard, the Commission did decide the basic issue and determined that Zuzich had not met the required burden of proof.

The real question presented then is whether the Commission erred in holding that Zuzich failed to meet the burden of proof imposed upon it. In this connection, Zuzich makes the further contention that the Commission's conclusion is arbitrary, capricious and contrary to the evidence because it adopted the Examiner's findings of fact but ignored those findings and his recommendations in reaching its conclusion and that it considered only the documentary evidence and failed to give any consideration to uncontradicted oral testimony. The Commission contends, however, that it did give consideration to the oral testimony as well as the documentary evidence and, when so considered, Zuzich wholly failed to meet the burden of proof by showing that substantial and actual operations were conducted on and continuously since the statutory date. The Commission asserts that Zuzich failed to show that it had transported commodities

**466**

other than packinghouse products and canned goods for shippers other than meat packinghouses.

We, of course, must and do recognize that the Commission in numerous instances has relied upon oral evidence in the absence of documentary proof of past operations to sustain an award of "grandfather" rights. See, e. g., J. B. Montgomery, Inc.—Modification of Permit, 83 M.C.C. 457, set aside on other grounds, J. B. Montgomery, Inc. v. United States, 206 F.Supp. 455 (D.Colo.1962), prob. juris. noted, 372 U.S. 952, 83 S.Ct. 951, 9 L.Ed.2d 977; M. D. Cressy Co., Inc.,—Modification of Certificate, 79 M.C. C. 89. And, on occasion, where the Commission has failed to consider such evidence, its order has been set aside and the case remanded to the Commission with directions to do so. See, e. g., Bird Trucking Company v. United States, 159 F.Supp. 717 (W.D.Wis.1955); Salvino v. United States, 119 F.Supp. 277 (W.D.Wash.1954). But, we think the Commission did consider the oral testimony presented by Zuzich in this case as it was required to do. The fact that the oral testimony was summarized in Appendix E of the Commission's report, supra, 83 M.C.C. at pages 645–647, is in itself an indication that the testimony was considered. In addition, the Examiner considered that testimony in making his findings and his statement of facts was expressly adopted, with slight modifications, by the Commission.

We must, however, also recognize that in those cases where the Commission relied upon oral testimony to sustain the award of the permit, it was persuaded that the testimony justified the grant made. And, in other instances, the Commission has held that the oral evidence of the claimed "grandfather" rights was insufficient proof of past operations, and this is particularly true where, as here, the "grandfather" rights have long been verified by the grant of a certificate or permit. See, e. g., Newsom Trucking Co., Inc., Common Carrier Application, 71 M. C.C. 663; and C. & E. Trucking Corporation—Modification of Permit, Docket No.

MC–2941 (Sub-No. 11), decided December 1, 1961.

The law is well settled that the extent of the "grandfather" rights to which an applicant is entitled is primarily a question of fact which Congress has entrusted to the Commission to determine. Noble v. United States, 319 U.S. 88, 93, 63 S.Ct. 950, 87 L.Ed. 1277; United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971; Alton Railroad Co. v. United States, supra; United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162.

Our task, of course, ends if the Commission has properly applied the statutory standards. A careful study of the Commission's report, which includes the Appendices attached thereto, leads to the conclusion that the Commission considered very thoroughly all of the evidence with respect to Zuzich's service prior to, on, and since the statutory date and determined that the permit then held by Zuzich reflected all of the "grandfather" rights to which it was entitled. The Commission necessarily found and concluded that the permit reflected "substantial parity" between Zuzich's future operations and prior bona fide operations as of the statutory date. We conclude that the proper statutory standards were applied in making this determination and therefore the Commission's order denying modification of the permit must stand.

The fact that the Commission adopted the Examiner's findings with slight modifications, and rejected his recommendations does not compel a different conclusion. The Commission not only is at liberty to reach its own conclusions upon the evidence but it is required to do so. Robbins v. United States, 204 F.Supp. 78 (E.D.Penn.1962); Convoy Company v. United States, 200 F.Supp. 10, 14 (D.Ore.1961).

*The Extension Proceeding*

Contemporaneously with the filing of its petition in the grandfather proceeding

and as a "precautionary measure", Zuzich also filed an application for a permit authorizing it to engage in the operations in question. Thus, if its efforts to obtain a modification of its permit in the grandfather proceeding were unsuccessful, Zuzich sought by this application to obtain the same authority as claimed in the grandfather proceeding by proving that such operations would be consistent with the public interest and the National Transportation Policy, as required by Section 209(b) of the Act, 49 U.S.C. § 309(b). Because of its findings in the conversion proceeding, the Commission treated Zuzich's application as one for a certificate authorizing the operations in question as a common rather than a contract carrier.

Representatives of eleven shippers of the commodities covered by the application testified in support of Zuzich's application. This testimony was to the effect that the shippers had used Zuzich's services in the past, they had found them to be satisfactory and they desired such services to continue. However, the majority of the witnesses conceded that the existing transportation facilities of other carriers in the area were adequate and many of them stated that they had used the facilities of these other carriers and found their services to be satisfactory. In addition, the testimony mentioned in the investigation proceeding concerning the many shipments of the commodities in question between 1952 and 1957 was presented in support of the application.

Zuzich asserted at the hearing that the transportation of the commodities involved represented in excess of 20 percent of its total tonnage and 16 percent of its total revenue. It also asserted that a denial of the application would eliminate the back-hauls on the heavy eastbound movements of its authorized operations.

The application was opposed by numerous rail and motor carriers doing business in the area. The testimony in their behalf was to the effect that: Either directly or in interline service they were authorized to perform the operations for which Zuzich sought additional authority; they had the necessary equipment to perform the services involved; they were at that time performing such services; and they actively solicited such traffic as Zuzich was then handling. In other words, the opposing carriers testimony was that they possessed the requisite authority to transport the commodities in question for the eleven supporting shippers and were ready, willing and able to do so.

In view of his recommended findings in the grandfather proceeding, the Examiner found that Zuzich's application should be denied and Zuzich did not except to such finding. However, having denied the modification in the grandfather proceeding, the Commission considered the application on its merits. It found Zuzich had not established that the present or future public convenience and necessity required the proposed operations and, in denying the application, said (83 M.C.C. at page 637):

"We are asked to consider past operations as evidence of a need for the proposed service. However, in cases such as this where an applicant knew or should have known that it was operating outside of the scope of its authority, a grant of authority based upon such past operations would place a premium on illegal activity. In the circumstances, we do not believe that respondent's past unauthorized operations are entitled to any weight whatever in determining whether the present or future public convenience and necessity require the proposed service. Consequently, we conclude that the application in the extension proceeding should be denied."

Zuzich contends that the Commission erred in determining whether its proposed service would be in the public convenience and necessity by failing to consider the evidence of its past operations and the supporting shipper's desire for the continuance of such operations. It argues that, contrary to the Commission's finding, its past operations in trans-

porting the commodities involved were not unauthorized or known by it to be outside the scope of its permit; but, rather, were conducted under a bona fide belief that it had the right to continue transportation which it says was being performed during the grandfather period. Hence, plaintiff asserts, the operations were lawful and evidence thereof should have been considered. Zuzich further argues that the Commission's decision completely repudiates the principles established by it with respect to past operations carried on under a claim of "grandfather" rights and arbitrarily imposed upon Zuzich a standard of proof both unwarranted and unprecedented. This argument is based upon the Commission's holding that Zuzich "knew or should have known that it was operating outside of the scope of its authority" and that to grant the authority requested would place a premium on "illegal activity".

As previously stated, although Zuzich's application was originally filed under 49 U.S.C. § 309(b), it was treated as one for a certificate of public convenience and necessity under 49 U.S.C. § 307(a). It is well settled that an applicant for a certificate has the burden of satisfying the statutory requirements. The applicant must prove its fitness, Kroblin Refrigerated Xpress, Inc. v. United States, 197 F.Supp. 39 (N.D.Iowa 1961), and must establish by a fair preponderance of the evidence that the present or future public convenience and necessity requires authorization of the proposed operations. Sloan's Moving & Storage Co. v. United States, 208 F.Supp. 567 (E.D.Mo.1962), aff'd, 374 U.S. 95, 83 S.Ct. 1687, 10 L.Ed. 2d 1026; Robbins v. United States, supra; Quickie Transport Company v. United States, 169 F.Supp. 826 (D.Minn. 1959), aff'd, 361 U.S. 36, 80 S.Ct. 140, 4 L.Ed.2d 111. The same rule is applicable with respect to an application for the extension of an existing certificate, McBride's Express, Inc. v. United States, 173 F.Supp. 539 (E.D.Ill.1958). One of the basic ingredients in determining

whether the public convenience and necessity requires the proposed operations is the adequacy of existing service. Robbins v. United States, supra. And, the court must sustain the Commission if its findings on the issue of present or future public convenience and necessity are supported by substantial evidence. Yourga v. United States, 191 F.Supp. 373 (W.D. Penn.1961); Patterson v. United States, 178 F.Supp. 771 (W.D.Ark.1959); Quickie Transport Company v. United States, supra.

We are convinced the Commission's finding that the public convenience and necessity does not require Zuzich's proposed operations is supported by substantial evidence. The basic ingredient of the adequacy of the existing service is clearly established by that evidence. The testimony of the opposing carriers shows that they possessed the requisite authority to perform such operations and they were ready, willing and able to do so. In addition, the supporting carriers conceded that, while they desired Zuzich's operations to continue, the existing facilities were adequate for their needs and many of them had used those facilities.

The major portion of the evidence in support of the application consisted of testimony and exhibits concerning Zuzich's past operations and, more particularly, the transportation of the commodities in question for the 5-year period from 1952 to 1957. The Commission refused to give this evidence "any weight whatever". Of course, the Commission cannot capriciously ignore evidence but, at the same time, it is not required to accept an applicant's evidence at face value. Robbins v. United States, supra. In order for evidence of past operations to be entitled to admission and consideration in determining whether there is a present or future need for such operations, they must have been lawful or, at least, conducted under some color of right. See, e. g., McBride's Express, Inc. v. United States, supra; Carl Subler Trucking, Inc., Extension-Citrus Juices, 78 M.C.C. 707, 713. But, evidence of

prior unauthorized operations should be considered in determining public convenience and necessity where such operations were undertaken under color of right or in good faith belief that they were authorized. See, e. g., Atlantic Greyhound Extension—Fort Jackson, 78 M.C.C. 211; Southeastern Motor Line, Inc., Com.Car.Application, 43 M.C.C. 37.

▮▮ The question then is whether the past operations relied upon by Zuzich were conducted under color of right. The bulk of the shipments involved in such operations was during the period from 1952 to 1957, which was subsequent to the time the Commission delineated the services that a "packinghouse products" and "canned goods" carrier could lawfully perform. See Dart Transit Co.— Investigation of Operations, 54 M.C.C. 429 (1952) and Bird Trucking Co.—Modification of Certificate, 53 M.C.C. 703 (1952). The Commission's action in the latter case was later modified, 61 M.C.C. 311, and then vacated and set aside in Bird Trucking Co. v. United States, supra, but on other grounds. Zuzich was therefore put on notice that its operations during that period were unauthorized. More significantly, however, the history of the "grandfather" case discloses that although Zuzich requested and received numerous modifications of its authority, it never once inquired about or requested the authority to transport the commodities in question. We therefore conclude that the Commission properly refused to give any weight to the evidence of past operations and that it properly denied the extension application.

### The Conversion Proceeding

By order dated January 3, 1958, and upon its own motion, the Commission instituted this proceeding under Section 212(c) of the Act, 49 U.S.C. § 312(c) to determine whether the permit held by Zuzich at that time should be revoked and a certificate of public convenience and necessity be issued in lieu thereof authorizing Zuzich to operate as a common carrier of the same commodities between the same points or within the same territories, as authorized by the permit.

The Examiner found that Zuzich's operations did not conform to the revised definition of a contract carrier, as set forth in Section 203(a) (15) of the Act, 49 U.S.C. § 303(a) (15), but were those of a common carrier. He recommended that an appropriate certificate of public convenience and necessity be issued to Zuzich authorizing it to operate as a common carrier from and to the points and in the manner described in its permit, as he recommended it to be modified in the grandfather proceeding, and that the separate grants of authority contained therein should not be tacked or joined, directly or indirectly, for the purpose of performing any through service. Zuzich did not except to this recommendation.

The Commission agreed that Zuzich's operations were those of a common carrier rather than a contract carrier and that a certificate of public convenience and necessity should be issued to it but held that such certificate should not authorize the transportation of the commodities involved in the other three proceedings. In addition to imposing the restrictions against tacking or joinder of separate grants of authority as recommended by the Examiner, the Commission imposed a further restriction as follows (83 M.C.C. at page 638):

"It is also noted that part of respondent's authority is subject to so-called Keystone restrictions. In the Brooks case the Commission concluded that in instances where Keystone restrictions appear in the permits of carriers whose authority is to be converted, the certificates to be issued in lieu thereof should contain terms which will continue to some extent, at least, the effectiveness of such restrictions. We shall restrict respondent's authority to the transportation of the commodities in question when moving between manufacturing or processing plants or other facilities of the particular establishments involved."

The certificate authorized to be issued to Zuzich by the Commission is set forth as Appendix F of the report, supra, 83 M.C.C. at pages 647–649, and will not be included herein. It is sufficient for our purposes to note that the portion of the commodity description set forth in the permit, as follows:

> "With persons (as defined in section 203(a) of the Interstate Commerce Act) who operate meatpacking companies, the business of which is the operation of meatpacking companies, for the transportation of the commodities indicated below.

> "(G) Such merchandise as is dealt in by meatpacking companies and in connection therewith, equipment, materials, and supplies used in the conduct of such business, * * *"

would be changed in the proposed certificate to be issued to Zuzich by the Commission's order, to read as follows:

> "Such merchandise as is dealt in by meatpacking companies and in connection therewith, equipment, materials, and supplies used in the conduct of such business, when moving to or from manufacturing or processing plants or other facilities of packinghouses, * * *"

In this action, Zuzich does not question its conversion to a common carrier but does contend that the Commission exceeded its statutory authority in imposing the restrictions upon the certificate to be issued to it. We must determine the legality of these restrictions in the light of 49 U.S.C. § 312(c), which states that a certificate issued in lieu of a permit " * * * shall authorize the transportation, as a common carrier, of the same commodities between the same points or within the same territory as authorized in the permit."

Beyond doubt, the Commission does have the requisite authority under that provision of the statute to impose upon a converted carrier a restriction against tacking or joining separate grants of authority, directly or indirectly, for the purpose of performing any through service. Tar Asphalt Trucking Co. v. United States, 208 F.Supp. 611 (D.N.J.1962), aff'd, 372 U.S. 596, 83 S.Ct. 948, 9 L.Ed.2d 976. That aspect of Zuzich's contention is therefore clearly without merit.

The remaining aspect is more difficult. Before examining the legality of that restriction, it will be helpful to briefly review the authority involved. By its permit, Zuzich was authorized to transport, among other things, packinghouse products and canned goods over certain designated routes. Under generally accepted principles, however, Zuzich could not transport packinghouse products for any and all shippers but was limited to transporting such products when they were moving from or to a meat packinghouse. Thus, Zuzich did not have unlimited authority to transport those products. As we read the proposed certificate, Zuzich still possesses that same authority and we therefore reject its contention that it has less authority under the proposed certificate than under the then existing permit.

However, Zuzich further argues that in enacting § 312(c) into law, it was the intention of Congress to make a converted carrier a full fledged common carrier of the products covered by its permit and therefore the restriction in question is illegal. In other words, Zuzich claims that upon being converted into a common carrier, the so-called Keystone restriction [1] should have been removed and it should become a common.

carrier without restriction. The Commission, on the other hand, relies upon its decision in the Brooks case and argues that the "substantial parity" test is applicable and any less restrictive language in the commodity description of the proposed certificate would give Zuzich an "unwarranted windfall". The Commission points out that the type of restriction involved here upon a common carrier was upheld in Morehouse v. United States, supra.

There is a conflict in the cases on this point. In J. B. Montgomery, Inc. v. United States, 206 F.Supp. 455 (D.Colo. 1962), prob. juris. noted, 372 U.S. 952, 83 S.Ct. 951, 9 L.Ed.2d 977, the court set aside the Commission's order imposing a similar restriction in a certificate to be issued to a converted carrier. The basis of the court's decision was that in view of the legislative history of § 312(c) the Commission had no authority to impose such a restriction. However, in P. Saldutti & Son, Inc. v. United States, 210 F.Supp. 307 (D.N.J.1962), the court adopted the position taken by the Commission in this case and held that under § 312(c), the Commission did have the statutory authority to impose a similar restriction upon a certificate to be issued to a converted carrier.

We believe that the Saldutti case is the sounder of the two. In that case, the court stated at page 314:

> "Under section 212(c) of the Act, a converted carrier is entitled to receive at the hands of the Commission a certificate that maintains parity with the operating authority contained in its contract carrier permit. The controlling factor is the operating rights authorized by the present permit. * * *"

And, further, at pages 314 and 315:

> "There is no authority under section 212(c) of the Act to issue a certificate for the transportation of commodities not authorized in the permit of the carrier. Since paragraph 2 of the permit does not authorize Saldutti to transport 'general commodities', the Commission would have no right to incorporate such authority, or to otherwise enlarge Saldutti's operations, in the certificate to be issued in the conversion proceeding."

We agree that the Commission does not have the authority under § 312(c) "to issue a certificate for the transportation of commodities not authorized in the permit" or "to otherwise enlarge" Zuzich's operations beyond what was authorized in the permit. This is in accordance with the language of the statute stating that a certificate issued thereunder " * * * shall authorize the transportation * * * of the same commodities between the same points or within the same territory as authorized in the permit." Strictly speaking, the restriction involved here is not a so-called Keystone restriction since Zuzich may render its services to anyone so long as the transportation it performs is of the appropriate products when moving "to or from" the manufacturing or processing plants or other facilities of packinghouses.

We hold that the Commission did not exceed its statutory authority by imposing the questioned restrictions in the certificate it proposes to issue to Zuzich.

*Conclusion*

We are convinced that the orders of the Commission relating to all four of the proceedings involved in this action are valid and should not be vacated or set aside under our limited scope of review. The orders should therefore be Affirmed.

Counsel for the defendants will prepare and submit an appropriate order and decree. The judgment of the court shall not become effective until a formal decree is submitted, signed and filed with the Clerk of the Court.