SCOTT TRUCK LINE, INC., Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

Civ. A. No. 5975.

United States District Court
D. Colorado.

June 27, 1958.

Grant, Shafroth & Toll, Charles H. Haines, Jr., Denver, Colo., and Stockton, Linville & Lewis, Denver, Colo., for plaintiff.

Victor R. Hansen, Asst. Atty. Gen., James E. Kilday and Colin A. Smith, Attorneys, Department of Justice, Washington, D. C., and Donald E. Kelley, U. S. Atty., Denver, Colo., for defendant United States.

Robert W. Ginnane, General Counsel, and James Y. Piper, Asst. General Counsel, Washington, D. C., for defendant Interstate Commerce Commission.

Before BREITENSTEIN, Circuit Judge, KNOUS, Chief Judge, and ARRAJ, District Judge.

BREITENSTEIN, Circuit Judge.

Scott Truck Line, Inc.,[1] sues to enjoin the enforcement of a cease and desist order of the Interstate Commerce Commission.[2] Jurisdiction is conferred by 28 U.S.C. § 1336. Hearing and determination by a district court of three judges is required under the provisions of 28 U.S.C. §§ 2325 and 2284.

The predecessor of Scott in 1936 filed with the Commission an application under the "grandfather clause" of the Motor Carrier Act of 1935[3] for a permit to transport as a contract carrier by motor vehicle in interstate commerce certain special commodities over a defined route. In 1938 the Commission issued a "compliance order" which provided that upon compliance with certain requirements a permit would be issued to the applicant for his motor contract carrier business. This order authorized the applicant to transport over defined routes "advertising matter and such general merchandise as is dealt in by wholesale and retail grocery and food business houses."

In 1943 a permit was issued which authorized the transportation of the commodities over the routes, as such commodities and routes were defined in the compliance order, with the restriction that applicant's operations as a motor contract carrier should be performed,

"* * * under special and individual contracts or agreements,

"With persons * * * who operate wholesale or retail establishments, the business of which is the manufacture, processing or sale of groceries or food, * * *."

The Commission, in 1949, authorized the transfer of the permit to Scott and issued to Scott a permit containing the same terms and conditions as were in the permit held by its predecessor.

In 1956 the Commission instituted an investigation concerning the practices of Scott in its operations under its permit. The matter was presented to an examiner on a stipulation of facts and he found that Scott was transporting authorized commodities within authorized territo-

---

1. Hereinafter referred to as Scott.
2. Hereinafter referred to as Commission.

3. 49 U.S.C.A. § 309(a). (1).

ries but under contracts with shippers with whom it was not authorized to contract.

Specifically the examiner found that: "* * * respondent [Scott] is transporting lye, detergents, soaps and similar commodities * * *, under contracts with persons or companies who operate establishments the business of which is not the manufacture, processing or sale of groceries or food; that such transportation, in interstate or foreign commerce, is not authorized by respondent's permit No. MC-64114, and is therefore unlawful, and should be promptly discontinued."

An appropriate cease and desist order was entered by the Commission. All procedural prerequisites to the institution of this court action have been satisfied.

From the stipulation of facts presented to the Commission it appears that Scott for several years had been transporting under special contract for four named shippers. The shippers and the commodities carried are thus described in the stipulation:

"That the business of said shippers is the manufacturing and selling of lye; cleaning compounds, liquid and dry; detergents; dish washing liquids and powder; and soap and soap compounds. None of the said companies engage in the manufacture, processing, or sale of food or of any articles for human consumption which are customarily served as a food, or which are used in the preparation of food.

\* \* \* \* \* \*

"That the shippers operate wholesale establishments and the articles which are manufactured or processed and sold by them, are items generally handled by, carried in the inventory of, and sold by retail grocery and food business houses in the United States."

Thus it is conceded that the articles transported are within the commodity description set out in the permit. The action of the Commission is based solely on the ground that the shippers are not within the class defined by the clause restricting those with whom Scott could contract. This clause is known as a "Keystone" restriction because it was first used by the Commission in its report in Keystone Transportation Company Contract Carrier Application 19 M.C.C. 475. Such a restriction on the class of shippers with whom a contract carrier might contract has been upheld by the United States Supreme Court in Noble v. United States, 319 U.S. 88, 63 S.Ct. 950, 87 L.Ed. 1277.

■■ The construction by the Commission of the scope of its permits will not be overturned by the courts unless clearly erroneous.[4] The courts will not examine the facts further than to determine whether there was susbtantial evidence to sustain the order.[5] He who attacks an order of the Commission "carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences."[6]

■ Scott urges that the inclusion of the Keystone clause in the permit was not proper because such limitation was not imposed by the compliance order. The compliance order was not a permit. By its own terms it was subject to change or modification by the Commission until the permit issued.[7] The Commission had

4. Andrew G. Nelson, Inc., v. United States, 355 U.S. 554, 558, 78 S.Ct. 496, 2 L.Ed. 2d 484.

5. Interstate Commerce Commission v. Union Pacific Railroad Company, 222 U.S. 541, 548, 32 S.Ct. 108, 56 L.Ed. 308; cf. Public Service Commission of Utah v. United States, 356 U.S. 421, 78 S.Ct. 796, 2 L.Ed.2d 886.

6. Interstate Commerce Commission v. City of Jersey City, 322 U.S. 503, 512, 64 S. Ct. 1129, 1134, 88 L.Ed. 1420.

7. The order reads that upon the satisfaction of certain conditions a permit shall be issued "unless otherwise ordered" in accordance with the specifications made a part of the order.

the power to include in the permit restrictions not contained in the compliance order.[8]

■ Scott urges that the permit which restricts it to contracts with "persons * * * who operate wholesale or retail establishments, the business of which is the manufacture, processing or sale of groceries or food" is an unlawful extension and distortion of the principles of the Keystone case. The import of the argument is that the original restrictions of the Keystone type were to define the business of a particular contract carrier by reference to whether the shippers served were wholesalers or retailers, whereas Scott's permit contains the more narrow limitation authorizing contracts only with those who are engaged in the manufacture, processing or sale "of groceries or food." As the Commission has the power to describe the business of a contract carrier in terms of the type or class of shippers served,[9] it can do so in the manner employed here.

The issue then narrows to the meaning of the word "groceries" as used in the Keystone clause. Scott says that it was intended to mean "all commodities customarily found in retail grocery or food business houses." The argument proceeds on the basis that as soap and the various other items in question are customarily found in grocery stores, a manufacture, processor or seller of such items is a manufacturer, processor or seller of groceries and, hence, one with whom Scott may contract under the Keystone clause.

The Commission has found that the term "groceries" as used in Scott's permit "means articles for human consumption which are customarily served as food, or which are used in the preparation of food, except fresh meats." Such definition has been consistently applied by the Commission.[10]

■ Counsel for Scott refer to various dictionary, encyclopedia, and text book definitions of groceries and also to the definition of that term contained in the opinion of the Colorado Supreme Court in Allen v. City of Colorado Springs, 101 Colo. 498, 501, 75 P.2d 141, 142. These are not persuasive, as we are dealing with the term groceries as used by the Commission which is charged with the administration of the act. Here the Commission has held that a manufacturer, processor or seller of lye, liquid and dry-cleaning compounds, detergents, dishwashing liquids and powder, and soap and soap compounds is not engaged in the business of manufacturing, processing or selling groceries or food. As

8. Crescent Express Lines, Inc., v. United States, 320 U.S. 401, 404, 64 S.Ct. 167, 88 L.Ed. 127.

9. Noble v. United States, supra.

10. Hazelwood Extension—Packing House Products, 49 M.C.C. 53, 57–58; Bird Trucking Company—Modification of Certificate, 53 M.C.C. 703, 706, 61 M.C.C. 311, 315–316. This latter decision was set aside on other grounds in Bird Trucking Co. v. United States, D.C., 159 F.Supp. 717, but the Commission's interpretation of "groceries" was specifically upheld. In connection with operating authorities, the Commission has interpreted the term "groceries" to include canned goods, Bos Freight Lines, Inc., Extension—Groceries, 28 M.C.C. 61, 65; cheese, butter and oleomargarine, Heuer Truck Lines, Inc.—Revocation of Certificate, 62 M.C.C. 769, 770, 66 M.C.C. 47, 57; vegetable oil shortening and cooking oil in packages, Beatty Motor Express, Inc., Ext.—Soap to Pittsburgh, Pa., 66 M.C.C. 160, 161. "Groceries" does not include fresh meats, Hazelwood Extension—Packing House Products, 49 M.C.C. 53, 57, Bonney Motor Express, Inc., Extension—Norfolk and Suffolk, Va., 71 M.C.C. 589, 592; and does not include dog food, soap, cleaning and washing compounds, toilet tissue, and paper napkins, Bird Trucking Co.—Modification of Certificate, 66 M.C.C. 413, 415. "Packaged groceries" does not include nonedible soap products, such as soap, soap powders, cleaning and washing compounds, toilet preparations, and glycerin, Beatty Motor Express, Inc., Extension—Murrysville, Pa., 64 M.C.C. 570, 571–572; Beatty Motor Express, Inc., Ext.—Soap to Pittsburgh, Pa., 66 M.C.C. 160, 161; Hudson-Bergen Trucking Co., Extension—Nassau County, N. Y., 71 M.C.C. 76, 78; Dan's Motor Lines, Inc., Extension—Soap Products, 73 M.C.C. 486, 487, 488.

there is a rational basis for such conclusion, the courts will not set it aside.[11]

■ The difference in language between the commodity clause and the Keystone clause does not create any ambiguity or uncertainty. The effect is clear. Under the Commission definition, soap is not included within the term "groceries." At the same time soap is a commodity generally found in a grocery store. Applying the two clauses together, Scott is authorized to transport soap under a contract with a manufacturer, processor or seller of groceries but not under a contract with a person who does not manufacture, process or sell groceries.

The situation is somewhat similar to that considered in Andrew G. Nelson, Inc., v. United States, supra. There a contract motor carrier contended that the phrase "stock in trade of drug stores" [355 U.S. 554, 78 S.Ct. 499] was a generic description of commodities by reference to place of sale and would entitle it to transport goods like those stocked in drug stores to any consignee within its territory. The court upheld the Commission in its position that the phrase had reference to intended use and authorized transportation of goods moving to a drug store or ultimately intended to become part of the stock of a drug store. In its opinion the court commented on the use by the Commission "of a definite and distinctive linguistic pattern whenever descriptions are made by reference to place of sale: * * *." [12]

In the instant case Scott asserts the right to contract with anyone who manufactures, processes or sells commodities generally found in grocery stores. If such had been the intent of the Commission, it would have used appropriate language in the Keystone clause of Scott's permit.

■ Under Andrew G. Nelson, Inc., v. United States, when there is no patent ambiguity, reference to the underlying grandfather operation is not permissible to aid in the interpretation of a permit.[13] The application of this rule would preclude consideration of Scott's argument that the grandfather application of its predecessor shows contracts with wholesalers and hence it should not now be under any restriction in its dealings with wholesalers. However, we have examined the grandfather application and have found that it does not disclose any contract transportation for any person who was not engaged in the manufacture, processing or sale of food or groceries as the term groceries is defined by the Commission.[14]

■■ Our examination of the original grandfather application and its supporting material does not sustain Scott's contention that the permit, as interpreted by the Commission, violates the grandfather clause of the 1935 act [15] in that it denies the right to carry on the operations which were conducted by Scott's predecessor prior to the controlling date. Even if it did, the point could not be raised in this proceeding as it constitutes a collateral attack on the permit. As is pointed out in Andrew G. Nelson, Inc., v. United States, supra, 355 U. S. at page 561, 78 S.Ct. at page 500, the remedy is to petition the Commission to reopen the grandfather proceedings.

■ Scott sought and received the Commission's approval for the transfer of this permit. It will not be heard in this proceeding to say that it is entitled

11. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed. 1260.

12. 355 U.S. 560, 78 S.Ct. 499.

13. 355 U.S. 558, footnote 3, 78 S.Ct. 498.

14. The shipping orders submitted in support of the grandfather application establish transportation for five shippers of the following items: crackers, coffee, pickles, meats, oleomargarine, salad dressing, sandwich spread and advertising. As to one shipper the general term "groceries" is used, but a detailed examination of the shipping orders shows that the following commodities were transported: tea, cheese, peanut butter, eggs, macaroni and like products, candy, oleomargarine, stearine, salad dressing, mustard, pickles, sauces, canned meats and canned soups.

15. 49 U.S.C. § 309(a) (1).

to more than its predecessor had or the transferred permit gave.[16] Any correction, modification or enlargement of the permit can only be obtained in a direct proceeding before the Commission.

It is deemed that this opinion sufficiently states the findings of fact and conclusions of law of the court. Further or additional findings and conclusions are not necessary. The clerk will prepare and submit a judgment denying the injunction and dismissing the case.

---

16. Callanan Road Improvement Co. v. United States, 345 U.S. 507, 513, 73 S. Ct. 803, 97 L.Ed. 1206.