DENVER CHICAGO TRANSPORT COM-
PANY, Inc., Plaintiff,

v.

UNITED STATES of America,
Defendant,

and

Interstate Commerce Commission,
Intervening Defendant.

Civ. A. No. 6525.

United States District Court
D. Colorado.

May 19, 1960.

786

Alvin J. Meiklejohn, Jr. and Leslie R. Kehl of Jones, Meiklejohn & Kilroy, Denver, Colo., for plaintiff.

Robert A. Bicks, Acting Asst. Atty. Gen., and James H. Durkin, Attorney, Department of Justice, Washington, D. C., and Donald G. Brotzman, U. S. Atty., District of Colorado, Denver, Colo., for defendant.

Robert W. Ginnane, General Counsel, and Carroll T. Prince, Jr., Asst. General Counsel, Interstate Commerce Commission, Washington, D. C., for intervening defendant.

Before BREITENSTEIN, Circuit Judge, and KERR and ARRAJ, District Judges.

BREITENSTEIN, Circuit Judge.

Plaintiff, Denver Chicago Transport Company, Inc., sues to set aside and enjoin the enforcement of an order of the Interstate Commerce Commission holding that the terms "liquid petroleum products" and "petroleum products" as used in certain of its certificates do not include petroleum.[1] Jurisdiction is conferred by 28 U.S.C. § 1336 and hearing by a three-judge district court is required by 28 U.S.C. § 2325.

In 1954, Collett Tank Lines filed a complaint against R. B. "Dick" Wilson, Inc., to whose rights the plaintiff has succeeded, alleging that Wilson was transporting crude oil between certain points without authority. Shortly thereafter Wilson petitioned the Commission for a determination that it could transport crude oil under its authorities or that its certificates be amended to read "petroleum and petroleum products." The Collett petition was held in abeyance and on June 30, 1955, the Commission determined that the term petroleum products as used in Wilson's certificates did not authorize the transportation of crude oil.[2] Wilson sued in this court to set aside such order.[3] On its own motion the Commission then reopened the Collett complaint proceeding[4] and the Wilson application proceeding.[5] The court action was dismissed without prejudice.

Subsequently the two proceedings were consolidated and hearings held before joint boards and an examiner. The report of the Commission, filed in 1958,[6] found that the transportation of crude oil, which had been the basis of the Collett complaint, had been discontinued and accordingly that complaint was dismissed. On the application of Wilson relating to its certificates the Commission reiterated its holding that the transportation of crude oil was not authorized. The plaintiff, which had obtained the operating rights of Wilson, then brought this suit.

■■ The issue is the scope of the plaintiff's authorities, i. e., whether authority to transport petroleum products authorizes the transportation of crude oil. The Commission's determination thereof will not be overturned by the courts unless clearly erroneous.[7] Coun-

1. For purposes of clarity, petroleum will be referred to as "crude oil."

2. R. B. Wilson Common Carrier Application, 64 M.C.C. 39.

3. R. B. "Dick" Wilson, Inc., v. United States, civil action No. 5472.

4. Docket No. MC–C–1685.

5. Docket No. MC–9895.

6. Collett Tank Lines v. R. B. "Dick" Wilson, Inc., 78 M.C.C. 369.

7. Andrew G. Nelson, Inc., v. United States, 355 U.S. 554, 558, 78 S.Ct. 496, 2 L.Ed.

sel for plaintiff criticize the clearly erroneous test and insist that the scope of judicial review is determined by § 10(e) of the Administrative Procedures Act.[8] We see no need to discuss the distinctions which are drawn. If the Commission's action violates the law or the constitution, if it is arbitrary, capricious, or an abuse of discretion, if it is based on findings which are unsupported by substantial evidence, or if the reviewing court on a consideration of the entire evidence is left with the definite and firm conviction that a mistake has been committed,[9] the action is clearly erroneous and appropriate relief should be granted.

In the ordinary use of the English language there is a distinction between a commodity and the products of that commodity.[10] In apparent recognition of this distinction plaintiff's counsel state that they do not care to make an issue of technical lexicology. Instead, they urge that the present interpretation of the certificates is contrary to the meaning of the terms as intended by the Commission at the time of the issuance of the certificates.

To establish such intent plaintiff's counsel direct attention to the report of the Commission in Classification of Motor Carriers of Property etc., 2 M.C.C. 703, 710, in which the following definition appears:

> *"Carriers of liquid petroleum products.*—Carriers of liquid petroleum products include those carriers who transport such petroleum prod-

ucts as gasoline and other liquid motor fuel, road oil, crude oil, fuel oil, kerosene, and like products * * *."

In its report in the instant case the Commission pointed out that the certificates here involved contained no reference to the Classifications case or to the definition therein stated. Also the Commission said that the Classifications case was decided during the formative period of motor vehicle regulation and related to the grouping of carriers for the establishment of safety, accounting and other regulations. This is buttressed by a consideration of the last sentence of the liquid petroleum products categorization.

> "The group also includes carriers of edible oils, coal-tar products, and chemicals, if transported in tank vehicles, but does not include the transportation of milk, fruit juices, or other perishable liquid products which require temperature control."

A reading of the entire categorization indicates an intention to set up a grouping for regulation of tank vehicles, not to provide a definitive commodity description. However, doubt is cast upon this conclusion by numerous references which the Commission has made to the Classifications case when considering commodity descriptions.[11] The matter is further complicated by a Commission rule relating to types or groups of commodities in which it is said:[12]

> "Carriers of liquid petroleum products include those carriers who transport such petroleum products

---

2d 484; Scott Truck Line, Inc. v. United States, D.C., 163 F.Supp. 118, 120.

8. 5 U.S.C.A. § 1009(e).

9. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746, rehearing denied 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147; United States v. Neel, 10 Cir., 235 F.2d 395, 399.

10. This distinction has been recognized, at least in later years, by the Commission. See Carl Humes (Formerly William Wrightesmith) Extension of Operations—Indiana, 48 M.C.C. 455, 457 (wire

and wire products); Giles Frank Vaughan Interpretation of Certificate, 52 M.C.C. 204, 205 (cotton and cotton goods).

11. E. g., Alice Coupland Syers Common Carrier Application, 18 M.C.C. 377, 378; Mirto Bigsby Extension of Operations—Ohio, 14 M.C.C. 339, 341; Benjamin F. Holmes Common Carrier Application, 12 M.C.C. 377, 378; J. G. Lundstrom, et al. Common Carrier Application, 13 M.C.C. 491, 498; Consolidated Freight Lines, Incorporated, Common Carrier Application, 11 M.C.C. 131, 133, 134.

12. 49 C.F.R. § 165.2(d).

as gasoline and other liquid motor fuel, road oil, fuel oil, kerosene, and like products in tank vehicles or drums."

It may be that for practical purposes this has been superseded by the report in Description in Motor Carrier Certificates, 61 M.C.C. 209, 263, but that report came long after the certificates in question were granted.

Plaintiff further urges that the Commission has used the terms "petroleum" and "petroleum products" interchangeably,[13] but the imprecise use of language in the reports relied upon makes the argument unimpressive. More troublesome is the terminology used by the Commission in the commodity descriptions contained in certain certificates where the authorization is for the transportation of "petroleum products other than crude oil."[14] It appears that in each of these instances the proceedings involved orders of examiners and a joint board which became effective by operation of law in the absence of exceptions which required consideration by the Commission.[15] Hence, there is no ground for concluding that the Commission intended that a grant of authority to transport petroleum products included the right to transport crude oil.

Enough has been said to indicate that there has been uncertainty in the use by the Commission of the phrase "petroleum products" in commodity descriptions. This is not a case in which there has been a consistent interpretation or construction of a descriptive phrase as was present in Scott Truck Line, Inc., v. United States, supra, and Arrow Trucking Co. v. United States, D.C., 181 F. Supp. 775. At the same time, from the standpoint of the ordinary use of words, it cannot be said that the phrase "petroleum products" is patently ambiguous. A commodity is distinguishable from its products.

The Supreme Court has pointed out that in the absence of a patent ambiguity the Commission, in interpreting or construing an authority, will not refer to the underlying grandfather operation.[16] The propriety of extending such rule to cases of uncertain intent, such as is here presented, has been recognized by the Commission in this case.[17] In its 1955 report the Commission examined the record in each of the grandfather proceedings to determine whether the authority granted was intended to cover crude oil,[18] and reached the conclusion that such was not the intent. When the case was reopened the Commission referred the matter to an examiner and several joint boards who received evidence as to the grandfather operations and submitted consolidated recommendations as to findings and report. The Commission then reviewed the grandfather evidence

13. See Walter L. Boyd Contract Carrier Application, 18 M.C.C. 278; Hutchinson Transportation Company Common Carrier Application, 19 M.C.C. 433; Dan S. Dugan Extension of Operations—Nebraska Points, 26 M.C.C. 233.

14. H. B. Bryan Extension—Wyoming, 47 M.C.C. 1106; R. B. Wilson Extension—Kansas, 47 M.C.C. 1005; and S. A. Markley and Loren G. Markley Extension—Wyoming, 52 M.C.C. 876 (not printed in full).

15. 49 U.S.C.A. § 17(5).

16. Andrew G. Nelson, Inc., v. United States, 355 U.S. 554, 557–558, note 3, 78 S.Ct. 496, 2 L.Ed.2d 484. See also Scott Truck Line, Inc., v. United States, supra, 163 F.Supp. at page 122, and P. Saldutti & Son, Inc., Interpretation of Permit, 63 M.C.C. 593.

17. This conclusion conforms with the decisions in Salvino v. United States, D.C., 119 F.Supp. 277, and Bird Trucking Co. v. United States, D.C., 159 F.Supp. 717. The Salvino case sought relief from a cease and desist order. In setting aside the Commission order the court referred to the refusal of the Commission to examine the grandfather clause proceedings to ascertain the meaning of "factory supplies" and by implication held that such examination should have been made. The Bird case involved a complaint proceedings. The court set aside the Commission order on the ground that there had not been a fair hearing and said that consideration should have been given to the commodities actually transported before June 1, 1935.

18. 64 M.C.C. 39, 42–45.

which is summarized in its report [19] and need not be repeated here.[20]

■ The service of a grandfather applicant must be continuous until the hearing by the Commission.[21] Testimony of the plaintiff's predecessor shows that the service relied upon was not continuous.[22]

■■ After considering the evidence the Commission concluded that in the grant of the authorities here involved there was no intent to include the right to transport crude oil.[23] The construction of a grandfather permit by the Commission is controlling on the courts unless clearly erroneous.[24] Here, there is substantial evidence to sustain the construction by the Commission. Its determination of its own intent cannot be said to be clearly erroneous. That intent is consistent with the literal meaning of the language used.

■ Counsel for plaintiff argue that the action of the Commission improperly gives retroactive operation to a policy change, is an unlawful revocation of a part of the plaintiff's authority in contravention of 49 U.S.C.A. § 312, and takes away its property, i. e., the right to transport crude oil, without due process in violation of the Fifth Amendment. These contentions need not be considered. The action of the Commission was an interpretation of the rights which the plaintiff had under its certificates and was taken after a full hearing in which careful review was made of the grandfather rights. Such action was not arbitrary, capricious, or clearly erroneous. There cannot be a deprivation or revocation of that which was not granted.[25]

The Supreme Court has said that he who attacks an order of the Commission

---

19. 78 M.C.C. 374–379.

20. In concluding its consideration of the grandfather evidence, the Commission said (78 M.C.C. 378–379):

"In order for Wilson to obtain authority to transport crude oil under the 'grandfather' clause of section 206(a) of the act, it is essential for it to establish that it and its predecessor have been engaged on and continuously since June 1, 1935, in the transportation of this commodity from and to the points claimed to have been served. In this connection, the oral evidence of R. B. Wilson and his former truckdriver with respect to the operations from the previously specified Wyoming points to Berthoud and Adams City [footnote 7. Located in the Denver, Colo., commercial zone.] do not relate to a period subsequent to 1936, and R. B. Wilson admits that such operations were discontinued during that year. The certification by the Perry Petroleum Company is indefinite as to origins from which the considered traffic moved and relates to a period subsequent to the critical date, June 1, 1935. The statement of the auditor of the Wyoming Highway Department is too indefinite as to points of origin and destination to have any important probative value. Neither the oral nor documentary evidence adduced to establish 'grandfather' rights for the transportation of crude oil shows specifically described operations for the period subsequent to 1936 and prior to March 24, 1941, the date the original certificate was issued in No. MC–9895. Commencement of operations after June 1, 1935, for the transportation of crude oil from and to points not served prior to that date obviously would not form a valid basis for a claim of 'grandfather' rights. It thus is clear that Wilson's predecessor, insofar as the record here shows, failed to meet the statutory requirements for the establishment of 'grandfather' rights to transport crude oil, and that denial of such authority was warranted."

21. Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 78, 62 S.Ct. 932, 86 L.Ed. 1283. There a cessation of operations for 69 days was held to sustain a conclusion by the Commission that the operations had not been continuous. See, also, Loving, Copartnership v. United States, D.C., 32 F.Supp. 464, affirmed 310 U.S. 609, 60 S.Ct. 898, 84 L.Ed. 1387.

22. The following is an excerpt from the direct examination of R. B. Wilson: "Q. For how long a time or up until about what time did this transportation of crude oil from any Wyoming origin to any Colorado destination carry on? A. I think 1936, when a pipeline was built into Denver." The original certificate on No. MC–9895 was issued March 24, 1941.

23. 78 M.C.C. 382.

24. Andrew G. Nelson, Inc. v. United States, supra, 355 U.S. at page 558, 78 S.Ct. at page 499.

25. Arrow Trucking Co. v. United States, supra.

**790**

"carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences."[26] The plaintiff has not sustained that burden and the interpretation, which the Commission, after full hearing, has placed on the authorities which it has granted, must stand.

This opinion sufficiently states the findings of fact and conclusions of law of the court. Further findings of fact and conclusions of law are unnecessary. The clerk will prepare and submit a judgment denying the injunction and dismissing the case.

26. Interstate Commerce Commission v. City of Jersey City, 322 U.S. 503, 512–513, 64 S.Ct. 1129, 1134, 88 L.Ed. 1420.