BEELINE EXPRESS, INC., Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

Consolidated Freightways Corporation of Delaware, Pacific Inter-Mountain Express Co., Inc., IML Freight, Inc., Garrett Freightlines, Inc., Rio Grande Motorway, Inc., DC International, Inc., Illinois-California Express, Navajo Freight Lines, Inc., Whitfield Transportation Co., and Ringsby Truck Lines, Inc., Intervening Defendants.

Civ. A. No. C–1058.

United States District Court, D. Colorado.

Jan. 21, 1970.

Edward C. Hastings and Sheldon S. Emeson, Denver, Colo., for plaintiff.

James L. Treece, U. S. Atty., Denver, Colo., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for defendant the United States.

Nahum Litt and Manny H. Smith, Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Maurice H. Greene, Boise, Idaho, and Roger Sollenbarger, Denver, Colo., for Intervening Defendants.

Before HILL, Circuit Judge, and KERR and DOYLE, District Judges.

## MEMORANDUM OPINION

KERR, District Judge.

This is an action brought by Beeline, Express, Inc., hereinafter referred to as "Beeline", whereby Beeline seeks to set aside, annul and suspend an order and report of the Interstate Commerce Commission, Division 1, entered on February 10, 1969, Consolidated Freightways v. Beeline Express, 108 M.C.C. 481. In its order the Commission required Beeline to cease and desist from conducting operations in interstate or foreign commerce which resulted in a violation of Section 206(a) (1)[1] of the Interstate Commerce Act.

On August 6, 1967, a complaint[2] was filed with the Interstate Commerce Commission against Beeline alleging that Beeline was violating the terms of its certificate[3] by transporting commodities not authorized by the terms of its certi-

---

1. The pertinent provisions of Section 206 (a) (1) read as follows:
   " * * * no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operations on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations * * * "

2. Ten motor carriers joined in filing the complaint. They are Consolidated Freightways Corporation of Delaware, Pacific Intermountain Express Co., IML Freight Inc., Garrett Freightlines, Inc., Rio Grande Motor Ways, Inc., D. C. International, Inc., Illinois-California Express, Navajo Freight Lines, Inc., Whitfield Transportation Co., and Ringsby Truck Lines, Inc.

3. The pertinent provisions of Beeline's certificate of public convenience and necessity read as follows:
   "Supplies used by beekeepers and live bees in hives, when moving in the same vehicle and at the same time with supplies used by beekeepers, between points in Colorado, on the one hand, and, on the other, points in Idaho, Oregon, and Washington, between points in Colorado, on the one hand, and, on the other, points in Utah, between points in Colorado, on the one hand, and, on the other, points in Texas, and between points in Utah, on the one hand, and, on the other, points in Arizona, California, Idaho, Montana, Nevada, New Mexico, Oregon, and Washington (except points in Jefferson, Clallam, Kilsap, and Mason Counties, Wash.)."

ficate. The complaint charged that Beeline had been transporting general commodities under a commodity description limiting it to providing a service for the beekeeping industry.

The Commission by order of September 13, 1967, directed Beeline to satisfy or answer such complaint, and further ordered that the proceeding be handled under modified procedure in accordance with rules 1.45 to 1.54, inclusive, of the Commission's General Rules of Practice. Although specific transportation, which was alleged as being conducted in violation of its certificate had been between points in Colorado and Utah, complainants sought an order requiring that Beeline cease and desist from the transportation of allegedly unauthorized commodities, which involved a commodity authorization to or from points in ten states.'

Complainants' argument and supporting affidavits were filed on October 18, 1967, and Beeline's answer and argument in response thereto was filed on November 17, 1967. In its answer to the complaint, Beeline admitted that all of the transportation of which complaint had been made, took place in the states of Colorado and Utah; denied that the transportation of such commodities was not authorized by the commodity description contained in its operating authority, and denied the commodities so transported were in excess of its authority or in violation of the Interstate Commerce Act.

By order dated March 11, 1968, the Commission assigned the matter to a Commission examiner for the recommendation of an appropriate order. The examiner served his report and recommended the cease and desist order on March 21, 1968. The hearing examiner found that the certificate issued to Beeline authorized only the transportation of such supplies which were at the time of movement definitely intended for use in connection with the occupation of beekeeping, or which were suitable for virtually no other use. The hearing examiner also found that Bee-

line had engaged in the transportation of commodities not authorized by its certificate in violation of Section 206 (a) (1) of the Interstate Commerce Act. He concluded that an order should be entered requiring Beeline to cease and desist from all operations in interstate or foreign commerce of the character found to be unauthorized, unless and until appropriate authority therefor is obtained.

On April 19, 1968, exceptions to the proposed report and recommended order were filed by Beeline, and on May 5, 1968, reply to said exceptions was filed by the complainants.

Upon consideration of exceptions by Beeline and replies thereto, the Commission, Division 1, issued a Decision and Order on July 5, 1968, wherein it was found that the evidence considered in the light of the exceptions and the reply did not warrant a result different from that reached by the examiner and the statement of facts. The conclusions and findings of the examiner being proper in all material respects, were therefore affirmed and adopted as the report of Division 1 of the Interstate Commerce Commission. Beeline was ordered to cease and desist from all operations in interstate or foreign commerce of the character found in the examiner's report to be unlawful. It was further ordered that the statutory effective and compliance date of the order was fixed as September 5, 1968.

That Decision and Order was vacated by order entered November 8, 1968, by the Commission, Division 1, acting as an Appellate Division on its own motion. Upon reconsideration, Division 1, acting as an Appellate Division, on February 10, 1969, by Report of the Commission on Reconsideration affirmed the prior determination requiring Beeline to cease and desist from the unauthorized transportation of certain commodities in violation of Section 206(a) (1) of the Interstate Commerce Act. It was further ordered that the order was not to become effective until the completion of

judicial review in this action, which was filed September 4, 1968.

■■ The scope of review of Commission orders is firmly and deeply established by a long line of well reasoned opinions. This Court will not modify or set aside orders of the Commission if they are issued within the scope of the Commission's statutory authority and are supported by substantial evidence. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L. Ed. 821 (1946). This Court is bound by the Commission's interpretation of a certificate of its own creation unless it is persuaded that it was arbitrary and capricious. Malone Freight Lines, Inc., v. United States, 107 F.Supp. 946 (N.D. Ala.1952), aff'd per curiam, 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712 (1953). The task of construing a certificate has been placed upon the Commission by Congress and such constructions will not be disturbed unless clearly erroneous. Denver Chicago Transport Company v. United States, 183 F.Supp. 785 (D.Colo. 1960), aff'd per curiam, 364 U.S. 627, 81 S.Ct. 356, 5 L.Ed.2d 363 (1961). We must give due credit to the expert judgment of the Commission in the field Congress has confided in it. National Bus Traffic Association v. United States, 143 F.Supp. 689 (D.N.J.1956), aff'd per curiam, 352 U.S. 1020, 77 S.Ct. 589, 1 L.Ed.2d 595 (1957).

The facts of the case are not in dispute, and Beeline so admits in its answer to the complaint before the Commission, exceptions to the examiner's report, and in its brief to this Court. In their complaint before the Commission, Consolidated Freightways, et al., alleged that Beeline transported numerous shipments of commodities unrelated to any service for the beekeeping industry between points in a ten-state area, and that such service amounted to general commodity movements between points in that ten-state area. Abstracts of shipments transported by Beeline showing all pertinent data were appended to verified statements attached to Consolidated's argument in support of the complaint.[4]

4. Abstracts of shipments transported by Beeline list the following commodities:

APPENDIX A

| | |
|---|---|
| 1. Cleaning compounds | 31. Paper cups |
| 2. Lawn mowers | 32. Ice cream freezers |
| 3. Lawn sweepers | 33. Metal window screens |
| 4. Mess benches | 34. Conveyer belts and chains |
| 5. Folding chairs | 35. Iron valves |
| 6. Handtrucks | 36. Carbon paper |
| 7. Wooden doors or shutters | 37. Tractor hitches |
| 8. Vending machines | 38. Brass pipe fittings |
| 9. Picnic table legs | 39. Wooden mouldings |
| 10. Steel filing cabinets | 40. Generators and motors |
| 11. Agricultural implement parts | 41. Lecithin oil |
| 12. Pneumatic valves on tires | 42. Wire baskets |
| 13. Platform or lift trucks | 43. Alternators |
| 14. Defective car slot sets | 44. Power pumps |
| 15. Child clothes | 45. Mop wringers |
| 16. Cloth garments | 46. Wall plastics |
| 17. Hats | 47. Electric scooters |
| 18. Cotton knit goods | 48. Paper forms |
| 19. Insulated copper wire | 49. Carpet sweepers |
| 20. Golf bags | 50. Pulley hoists |
| 21. Personal effects | 51. Lubricating grease |
| 22. Store display cabinets | 52. Store display racks |
| 23. Printed forms | 53. Printed material |
| 24. Plow or cultivator | 54. Gas burners |
| 25. Flower pot stands | 55. Asbestos backing |
| 26. Aluminum castings | 56. Display racks |
| 27. Sun glasses | 57. Ornamental stands and mirrors |
| 28. Calendars | 58. Carrying cases |
| 29. Glass windows | 59. Mechanical hand tools |
| 30. Utility trailer | 60. Cardboard baskets |

| |
|---|
| 61. Cardboard cartons |
| 62. Window screens and hardware |
| 63. Combustion engines |
| 64. Plastic straps |
| 65. Lubricating oils and greases |
| 66. Pulley hoists |
| 67. Cherry labels |
| 68. Gummed labels |
| 69. Canvas drapers |
| 70. Auto parts |
| 71. Refrigerator parts |
| 72. Gasoline engines |
| 73. Piston rings |
| 74. Clothes |
| 75. Overhead track iron |
| 76. Dried blood |
| 77. Pulley blocks |
| 78. Nylon jackets |
| 79. Iron stairs |
| 80. Baby food and cereal food preparations |
| 81. Fertilizer |
| 82. Air registers |
| 83. Floor paint |
| 84. Paper |
| 85. Playing cards |
| 86. Elevator parts |
| 87. Harrows |

In its answer Beeline admitted the transportation and asserted that it held appropriate authority in that all such commodities transported were "supplies used by beekeepers".

The principal issue the Commission, Division 1, was confronted with was whether or not the commodities transported by Beeline came within the specific language of the certificate, viz: "Supplies used by beekeepers and live bees in hives, when moving in the same vehicle and at the same time with supplies used by beekeepers * * *".

Such a certificate involves the so-called "intended use" test for delineating the commodities a carrier can transport thereunder. 108 M.C.C. 483. This was explained by the Commission in C & H Transportation Co., Inc., Interpretation of Certificate, 62 M.C.C. 586 (1954):

"In the issuance of motor-carrier operating authorities this Commission from the beginning of motor-carrier regulation has identified the commodities authorized to be transported in three principal ways: (a) by naming them specifically (a practice which is impractical in many instances), (b) by the use of generic or class terms, and (c) by reference to the intended future use. In the selection of generic or class terms and in the description of commodities by reference to their intended future use, terms common in industry or trade uses or practices have been adopted and used according to their common acceptance, rather than in any academic or literal sense, and for the most part they have been fairly construed by the carriers according to their obvious intent."

The Commission in the case at bar reached the conclusion that:

"* * * the commodity description 'supplies used by beekeepers' authorizes only the transportation of those commodities which are used or

APPENDIX B

| | |
|---|---|
| Hives | Lumber |
| Foundations for beeswax | Trucks and truck parts |
| Veils | Motors |
| Helmets and hats | Machinery and parts |
| Aprons and gloves | Steam boilers |
| Clothing | Tanks |
| Honey containers | Generators |
| Wood squares to hold combs | Pumps |
| Tin ware | Pallets |
| Pails | Building materials |
| Glue | Pipe fittings |
| Tape, plain and gummed | Typewriters |
| Wax moth fumigators | Adding machines |
| Nails and staples | Filing cabinets |
| Frames | Refrigerator parts |
| Brushes | Tables and chairs |
| Paints and paint materials | Work benches |
| Handtrucks | Drums, beeswax and refuse |
| Cleaning compounds | Posts and fencing |
| Boots | Mowers |
| Cups and cartons (paper) | Rakes and shovels |
| Bottles and caps | Baskets |
| Labels | Valves |
| Printed matter | Beams and girders |
| Calendars | Lifts |
| Covers | Drills |
| Springs | Oil and grease |
| Knives and pliers | Gasoline |
| Gaskets | Fuels |
| Wire | Seed |
| Screens | Fertilizer |
| Sun glasses | Sugar and other foods |
| Carrying cases | Ethelyne oxide |
| Tools | |

consumed by a person while acting in the capacity of a beekeeper, and which, at the time of their shipment, are intended for use in this manner by such a person." 108 M.C.C. at p. 483.

The intended use test has been applied by the Commission on a number of occasions and subsequently approved by the Courts. See generally, Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958); Converse v. United States, 109 F.Supp. 807 (N.D.Cal.1953); Mitchell Bros. Truck Lines v. United States, 225 F. Supp. 755 (D.Or.1963); Whitehouse Trucking, Inc. v. United States, 261 F. Supp. 9 (N.D.Ohio 1966), aff'd per curiam, 388 U.S. 453, 87 S.Ct. 2111, 18 L. Ed.2d 1317 (1967).

Thus, the Commission has set forth guidelines in construction of such certificates and this Court cannot conclude that the application of the intended use test by the Commission in this case is clearly erroneous.

■ The Commission has also set forth specific teachings used in the interpretation of the intended use test. See W. T. Mayfield Sons Trucking Co. —Interpretations, 92 M.C.C. 167, guidelines approved in W. T. Mayfield Sons Trucking Company v. United States, 234 F.Supp. 655 (N.D.Ga.1964). Under these guidelines the condition of the commodities at the time of movement and the carrier's knowledge as to their intended use at the time of movement are the controlling factors which determine the extent of the carrier's operating authority. The carrier's notice need not be actual and where circumstances indicate that it should be reasonably apparent to the carrier that the commodities are not suitable for their intended use, the carrier may be obligated to ascertain with reasonable certainty the actual use intended.

These standards as used by the Commission are clearly not arbitrary or capricious. They were reasonably applied to the facts of this case and holding the carrier to the standard of knowledge is not an unreasonable requirement by the Commission.

Beeline, in effect, is seeking to have this Court declare that its certificate authorizing the transportation of "supplies used by beekeepers" actually constitutes a grant of authority to transport general commodities. This is clearly demonstrated by the list of commodities transported as set forth in footnote 4. Among these commodities are such items as picnic table legs, calendars, ice cream freezers, golf bags, child clothes, and sun glasses. Absent a showing to the contrary, such items as these would ordinarily have no relation to the operation of an apiary. The Commission did not find that Beeline could not transport these commodities under any circumstances. It simply held, under the intended use theory, that since these types of commodities bore no direct relation to the occupation of beekeeping, in order for Beeline to transport such commodities lawfully, it must ascertain that their intended use was by a beekeeper. See 108 M.C.C. at page 484.

■ The hearing examiner found that the phrase, "used by beekeepers", was a phrase of limitation. This finding was adopted by the Commission in its report and we agree that such a phrase is a limitation on general commodity authority and the finding is reasonable in all respects.

■ Furthermore, the manner in which the intended use theory was applied by the Commission in the instant case was clearly not erroneous. Their application of the intended use theory was based upon substantial evidence as found by the hearing examiner. Where there is a rational basis for the Commission's order, such action necessarily cannot be classified as arbitrary or capricious. Eastern Central Motor Carriers Ass'n v. United States, 239 F.Supp. 591 (D.D.C.1965). Where Congress has delegated authority to an administrative agency to adopt and administer regulations, wide latitude is given the agency in the interpretation of such regulations. As the Court stated in Dart Tran-

sit Co. v. Interstate Commerce Commission, 110 F.Supp. 876, 880 (D.Minn. 1953), aff'd per curiam, 345 U.S. 980, 73 S.Ct. 1138, 97 L.Ed. 1394, "In the interest of uniformity in the regulation and policing of the motor carrier industry, it is of course essential that the Commission be subjected to as little judicial interference as the law will permit".

In this case we therefore conclude that the Interstate Commerce Commission, Division 1, did not act arbitrarily or capriciously in issuing its report and order of February 10, 1969. Their conclusion that Beeline Express, Inc., was operating outside the scope of its certificate in violation of Section 206 (a) (1) of the Interstate Commerce Act was supported by substantial evidence and was not clearly erroneous.

Accordingly, the cease and desist order of the Commission may now take effect and an order will be entered dismissing the plaintiff's complaint.