**RINGSBY–PACIFIC, LTD., a corporation, and Ringsby Truck Lines, Inc., a corporation, Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**Wells Cargo, Inc., O. N. C. Motor Freight System, and Western Gillette, Inc., Intervening Defendants.**

Civ. A. No. C-3005.

United States District Court, D. Colorado.

Oct. 6, 1971.

Bertram S. Silver, Silver, Rosen & Johnson, San Francisco, Cal., John F. Mueller, Littleton, Colo., for plaintiffs.

Richard W. McLaren, Asst. Atty. Gen., John H. D. Wiggers, Atty., Dept. of Justice, Washington, D. C., James L. Treece, U. S. Atty., Carolyn J. McNeill, Asst. U. S. Atty., Denver, Colo., Fritz R. Kahn, Gen. Counsel, Geraldine R. Keyes, Atty., I. C. C., Washington, D. C., for defendants.

R. Y. Schureman, Russell & Schureman, Los Angeles, Cal., Warren D. Braucher, Denver, Colo., for intervening defendants.

Before McWILLIAMS, Circuit Judge, ARRAJ, Chief District Judge, and WINNER, District Judge.

WINNER, District Judge.

Jurisdiction of this three-judge case is founded upon 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325, inclusive; upon 49 U.S.C. § 305(g) and upon 5 U.S.C. § 701. The Interstate Commerce Commission has ruled that Ringsby-Pacific, Ltd. cannot serve Reno, Nevada, under its existing authority, and plaintiffs ask that the Commission's order be set aside to the extent that the order prohibits "interchange in Nevada by plaintiff Ringsby-Pacific, Ltd."

An abbreviated history of the matter follows. Fortier Transportation Company was an intrastate carrier operating in California under intrastate authority registered with the Interstate Commerce Commission. In 1963, Ringsby Truck Lines set out to acquire Fortier, and it applied for a new certificate which would permit it to operate in interstate commerce. After a hearing, the Commission authorized the acquisition and approved the issuance of a new certificate. [Commission Docket No. MC–52709.] Thereafter, members of the Ringsby family acquired Fortier, and they maintained the separateness of the two carriers. Further proceedings were had before the Commission, and the issuance of a certificate to Fortier was authorized in Docket No. MC–108398 (Sub-No. 33). At the same time, Fortier was authorized to acquire the oper-

ating rights of another carrier whose authority included California, Oregon, Washington and Nevada. Later, the Sub-No. 33 certificate issued to Fortier was cancelled and was replaced by another Sub-No. 33 certificate issued to Ringsby-Pacific, and this lawsuit involves the Sub-No. 33 certificate issued to Ringsby-Pacific.

The part of the Sub-No. 33 certificate of primary importance here reads:

"REGULAR ROUTES:

"General commodities . . . Between points in California, serving all intermediate points; and points within ten miles thereof, . . . . as follows:

"From San Francisco over U. S. Highway 101 to San Diego except no service shall be provided between San Diego and National City, Calif., on the one hand, and, on the other, points in Nevada on the west of U. S. Highway 395, and return over the same route. . . .

"From San Francisco over U. S. Highway 40 to Portola, and return over same route. . . .

"From Davis over Alternate U. S. Highway 40 to junction U. S. Highway 395, thence over U. S. Highway 395 to junction unnumbered state or county highway, thence over unnumbered state or county highway to Herlong, and return over the same route."

When the certificate was issued, there was no suggestion on the part of anyone that it was intended to include authority to serve Reno, Nevada, but the growth of Reno resulted in the annexation of additional territory to that city, and plaintiffs argue that the annexation indirectly authorizes it to serve Reno. The genesis of this case is set forth in the Report and Order recommended by Joint Board No. 781 (No. MC–C–6236): [1]

"The certificate contains 24 additional routes between various California points. The junction between Alter-

---

1. In this order, RPL refers to Ringsby-Pacific, Ltd. and RTL refers to Ringsby Truck Lines, Inc.

nate U. S. Highway 40 (now California Highway 70) and U. S. Highway 395 is known as Hallelujah Junction which is almost adjacent to the California-Nevada State Line. A ten mile radius from this junction will include one northwest corner of the Reno city limits after they were enlarged during Feb. 1968 which annexed a portion of Stead Air Force Base. Reno's commercial zone extends four miles beyond the corporate limits. RTL is authorized to serve Reno under several certificates. After the city limits of Reno were extended, RPL and RTL began to transport traffic between points in the San Francisco Bay area, on the one hand, and, on the other, Reno, Nev., under an interpretation of the Sub-No. 33 certificate authorizing service at all points within 10 miles of Hallelujah Junction. The eastbound traffic moved by RPL to the point known as 'Sweeny's Ranch' where it was interchanged with RTL, the traffic moving in the same equipment under a lease arrangement. Sweeny's Ranch is located within the commercial zone of Reno. Several ranch buildings are located near the point of interchange.

"When an RPL unit reaches Chilcoot, 10 miles west of Hallelujah Junction, the driver calls the terminal manager at Reno who meets him at Sweeny's Ranch and makes the necessary arrangements for the interchange which on the public highway, near the ranch buildings. (sic) In connection with the westbound movement an employee of RPL performs the interchange arrangements at the Sweeny's Ranch location.

"On June 22, 1968, the Commission's District Supervisor at Denver notified both respondents that they were not authorized to transport traffic between San Francisco etc., on the one hand and, on the other, Reno as RTL could only serve points in the Reno commercial zone in connection with traffic moving in RTL line haul service to or from Reno. On June 8, 1968,

respondents' counsel replied that since the 10 mile radius of Hallelujah Junction included a portion of the city of Reno, the commercial zone was not involved and it was his opinion that the respondent held the necessary authority to perform the services in question."

The Joint Board concluded, inter alia:

"Service is definitely authorized at all intermediate points but not all points within ten miles of such routes. It is significant that the certificate specifically sets forth all intermediate points but the authorization does not include all points within ten miles of the 28 routes. Since the certificate was limited to points in California, it would have been redundant to have included in the off-point provision a phrase 'in California.'

"The mere fact that a restriction in a route between San Francisco and San Diego refers to Nevada points could not by any stretch of interpretative procedures be construed as authorizing service at a point in Nevada. . . . Thus the joint board concludes that the only points within ten miles of Hallelujah Junction which RPL is authorized to serve must be located in California."

The findings and conclusions of the joint board were adopted by order of the Interstate Commerce Commission dated February 8, 1971, and this action followed on March 31, 1971.

As a preface to consideration of the three-pronged attack plaintiff launches on the decision of the Interstate Commerce Commission, it is noted that the Commission proceedings were initiated by an order of November 14, 1968, which ordered an investigation under Sec. 204(c) and 212(a) of the Interstate Commerce Act to determine whether the carriers were operating "in violation of Sec. 206(a) of the Act and the terms, conditions and limitations of their certificates," and which also ordered "that the Bureau of Enforcement be directed

to participate as a party in this proceeding."

Plaintiff challenges the Commission's decision on these grounds:

1. Plaintiff says that if the Sub-No. 33 certificate is not ambiguous, it must be read to permit plaintiff to serve Reno, and that the Commission was wrong in reading the certificate diametrically.

2. Next, says plaintiff, the Commission made no express finding as to whether the certificate is ambiguous, but, if the Commission thought that it was, it failed to explain the basis for its decision.

3. Lastly, plaintiff complains that it did not receive procedural due process in the hearing because it didn't realize at the time of the hearing that the basic question of the scope of the certificate was involved.

This last attack of plaintiff is grounded upon certain letters exchanged between counsel which plaintiff treats as "pleadings" in the Commission proceeding. The first letter-pleading is a letter written by plaintiff's counsel to the Regional Counsel for the Interstate Commerce Commission in which it is suggested that a meeting of counsel should be arranged. In reply thereto Regional Counsel indicated that he thought the issue was one of the right of Ringsby Truck Lines and Ringsby-Pacific, Ltd. to tack authorities to provide what was said to be through line service from San Francisco to Reno. This letter commented that of prime importance was a Commission decision in Joint Northeastern Motor Carrier Association v. Creager Freight Lines, 91 MCC 494. Plaintiff says that it was prepared to go to trial on the issues raised by the letter-pleadings, but that it was not ready for trial on the broad question of the scope of the certificate; that it was surprised that the Commission rested its decision on the scope of the certificate, and that Ringsby was thereby deprived of procedural due process.

In its opening brief, plaintiff frankly concedes that the scope of judicial review of a Commission order is limited, but plaintiff says that here we have one of those exceptional circumstances where a court should intervene. In Denver-Chicago Transport Co. v. United States [D.C.Colo.] (1960) 183 F.Supp. 785, Judge Brietenstein described those situations:

"If the Commission's action violates the law or the constitution, if it is arbitrary, capricious, or an abuse of discretion, if it is based on findings which are unsupported by substantial evidence, or if the reviewing court on a consideration of the entire evidence is left with the definite and firm conviction that a mistake has been committed, the action is clearly erroneous and appropriate relief should be granted."

But, unless those exceptional conditions exist, the Commission's interpretation of a certificate issued by it will not be overturned. Service Storage & Transfer Co. v. Virginia (1959) 359 U.S. 171, 79 S.Ct. 714, 3 L.Ed.2d 717; Andrew G. Nelson, Inc. v. United States, (1958) 355 U.S. 554, 78 S.Ct. 496, 2 L. Ed.2d 484; Beeline Express Inc. v. United States [D.C.Colo.] (1970) 308 F.Supp. 721, affd. (1970) 398 U.S. 955, 90 S.Ct. 2170, 26 L.Ed.2d 539; Denver Chicago Transport Company v. United States [D.C.Colo.] (1960) 183 F.Supp. 785, affd. (1961) 364 U.S. 627, 81 S.Ct. 356, 5 L.Ed.2d 363 and, most recently, Lund v. United States [D.C.Colo.] (1970) 319 F.Supp. 552, where Judge Hill said:

"When reviewing an order of the Interstate Commerce Commission, we are confined to the interpretation placed by the Commission upon a certificate of its own creation. That interpretation binds this court unless it was capricious or arbitrary, constituted an abuse of discretion, or violated an established principle of law. We do not construe, de novo, the certificate; we will not reevaluate the un-

disputed facts relating to the services performed under the pretended authority of the certificate; nor are we concerned with the weight of the evidence. The task of construing a certificate has been placed upon the Commission by Congress and such construction will not be disturbed unless clearly erroneous."

■ We do not think that the Commission's interpretation was clearly erroneous. To the contrary, we think that it was correct. The certificate granted authority "between points in California," and the only 28 points enumerated in the certificate were all California points. There was no reason for the Commission to make any finding as to whether the certificate was ambiguous. It is apparent that the Commission thought that it was not ambiguous and that its decision was based upon what it thought was the clear meaning of its own certificate. This, then, disposes of plaintiff's first two arguments, because we agree with the Commission that the certificate is not ambiguous and we agree that its plain meaning is that plaintiff possesses no authority under the Sub-No. 33 certificate to serve Reno, Nevada.

■ This, then, leaves for consideration plaintiff's argument that it was deprived of procedural due process. It must be remembered that the order initiating the proceeding directed an investigation to determine whether plaintiffs were operating "in violation of . . . the terms, conditions and limitations of

their certificates." That same order made the Bureau of Enforcement a party to the proceeding. It is difficult to accept a claim of surprise by a decision which manifestly is directed at the breadth of the certificate being investigated. It is equally difficult to hold that informal letters between counsel for plaintiffs and counsel for the Commission limit the jurisdiction or the right of the Commission to pass upon a question encompassed within the Commission's investigative order, and this is particularly so when in this case the Bureau of Enforcement was a party to the proceeding. However, even if these hurdles could be cleared by plaintiffs, there remains the insurmountable problem that the intervenors, who were also parties to the proceeding, enthusiastically raised the very question on which the Commission's decision rests. A review of the briefs filed with the Commission shows that all parties—including plaintiffs—argued the scope of the Sub-No. 33 certificate and the right of plaintiffs to serve Reno under that certificate. Plaintiffs were surely aware of the fact that the question was before the Commission, and that the case might turn on that point. It did. The Commission held that the Sub-No. 33 certificate granted no authority to serve Reno, and, with that holding, it did not reach and there was no reason it should have reached the tacking arguments of plaintiffs. Plaintiffs' prayer that the Commission order be set aside is denied; the order of the Commission is affirmed, and it is ordered that the complaint be dismissed.